Paul R. Kiesel, State Bar No. 119854
  *kiesel@Kiesel-Law.com*
Jeffrey A. Koncius, State Bar No. 189803
  *koncius@Kiesel-Law.com*
Matthew A. Young, State Bar No. 266291
  *young@Kiesel-Law.com*
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   310-854-4444
Fax:   310-854-0812

[*Additional Counsel for Plaintiffs Listed on Signature Page*]

Attorneys for Plaintiff, STANLEY NADER, on behalf of himself and all others similarly situated.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STANLEY NADER, on behalf of himself and all others similarly situated<br><br>                   Plaintiff,<br><br>          v.<br><br>CAPITAL ONE BANK (U.S.A.), N.A. and DOES 1 through 20,<br><br>                   Defendants.<br><br>AND RELATED CONSOLIDATED CASES | Case No. CV-12-01265-DSF (RZx) [Consolidated with Case Nos. CV-12-1772-DSF (RZx) and CV-12-4906-DSF (RZx)]<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:   Hon. Dale S. Fischer<br>Date:     November 3, 2014<br>Time:     1:30 p.m.<br>Crtrm.:   840 - Rovbal |

TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 3, 2014, at 1:30 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Dale S. Fischer, United States District Court, Central District of California, Western Division, Plaintiffs in this action, Stanley Nader and Jarett Olson, and Albert O. Benkert, Plaintiff in the action filed in Florida as explained herein (collectively, "Plaintiffs"), will and hereby do move the Court, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) and California Code of Civil Procedure § 1021, *et seq.*, for an order approving and awarding attorneys' fees, litigation costs, and incentive awards. By way of this Motion, Plaintiffs seek:

1.     $750,000 in attorneys' fees;

2.     $16,189.34 in verified litigation costs to Class Counsel; and

3.     $25,000 in incentive awards to each of the Plaintiffs.

This Motion is made on the grounds that: (1) Plaintiffs' requested attorneys' fees are fair and reasonable in light of the efforts of Class Counsel in obtaining the settlement; (2) the requested attorneys' fees comport with the applicable law; (3) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with the prosecution of this action; and, (4) a reasonable payment to the Plaintiffs for their efforts on behalf of the Class is warranted and appropriate.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declarations of Class Counsel and the Settlement Administrator filed with the Motion for Final Approval and incorporated herein by reference, the pleadings and records on file herein, and upon such additional evidence or argument as may be accepted by the Court at or prior to the hearing.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

1  DATED: August 13, 2014        **KIESEL LAW LLP**

2

3                                By:  /s/ Jeffrey A. Koncius

4                                     PAUL R. KIESEL
                                      JEFFREY A. KONCIUS
5                                     MATTHEW A. YOUNG
                                      Attorneys for Plaintiffs and the Class
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR
                                                     ATTORNEYS' FEES, LITIGATION COSTS, AND
                                                              INCENTIVE AWARDS

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................... 1

II.    PERTINENT PROCEDURAL HISTORY ............................................... 2

III.   THE NATURE OF THE SETTLEMENT NEGOTIATIONS ................. 2

IV.   SETTLEMENT TERMS ......................................................................... 3

V.    NARROWLY TAILORED RELEASE .................................................... 4

VI.   ATTORNEYS' FEES AND COSTS AND ENHANCEMENT
       AWARDS ................................................................................................ 4

VII.  *CY PRES* DISTRIBUTION OF COMMON FUND REMAINDER ............... 5

VIII. PRELIMINARY SETTLEMENT APPROVAL, NOTICE AND
       CLASS REACTION TO DATE ............................................................... 5

IX.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND
       JUSTIFIED AND SHOULD BE APPROVED BY THE COURT ................. 6

     A.   California Law Controls Plaintiffs' Fee Request ............................. 6

     B.   California and Federal Law Indicate that the Court Should Apply
           the Percentage-of-Fund Method to Calculate Plaintiffs'
           Attorneys' Fees ................................................................................ 7

     C.   Class Counsel Seek the Ninth Circuit's Benchmark of 25% of the
           Fund .................................................................................................. 9

          1.   A Successful Result for the Class Was Achieved ..................... 10

          2.   The Case Involved Complex Legal Issues and Significant
                Risks, Requiring Skill and Superior Work to Overcome .......... 10

          3.   Class Counsel Took on a Heavy Contingent Risk,
                Advanced All Litigation Costs, and Worked on this Case
                Without Any Guarantee of Success .......................................... 12

          4.   The Requested Fee Is Well in Line with the Range of
                Percentage Fee Awards Approved by the Ninth Circuit
                and Its District Courts ............................................................... 14

     D.   A Lodestar Cross-Check Confirms that Plaintiffs' Requested
           25% Fee Is Reasonable .................................................................. 14

          1.   Class Counsel's Lodestar Is Reasonable and Compensable ...... 15

          2.   Class Counsel's Hourly Rates Are Reasonable and Have
                Been Approved by Other Courts ............................................... 19

          3.   While a Lodestar Multiplier Is Commonly Granted in

Class Actions, One Is Not Being Sought Here ........................... 20

E.      Plaintiffs Should Be Reimbursed Their Litigation Costs .................... 21

F.      The Court Should Grant Incentive Awards to the Plaintiffs as
        Class Representatives ................................................................. 22

X.      CONCLUSION ................................................................................. 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii          NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

## <u>TABLE OF AUTHORITIES</u>

<u>**CASES**</u>

*Bank of Am. v. Micheletti Family P'ship*
    No. C 08–2902 JSW (JL), 2009 U.S. Dist. LEXIS 116893 (N.D. Cal.
    Feb. 26, 2009).............................................................................................. 6

*Barjon v. Dalton*
    132 F.3d 496 (9th Cir. 1997) ..................................................................... 19

*Been v. O.K. Indus., Inc.*
    No. CIV-02-285-RAW, 2011 U.S. Dist. LEXIS 115151 (E.D. Okla.
    Aug. 16, 2011)............................................................................................ 20

*Bolton v. U.S. Nursing Corp.*
    No. C 12-4466 LB, 2013 U.S. Dist. LEXIS 150299 (N.D. Cal. Oct. 18,
    2013)............................................................................................................ 23

*Chalmers v. City of Los Angeles*
    796 F.2d 1205 (9th Cir. 1986) ................................................................... 19

*Children's Hosp. & Med. Ctr. v. Bunt*
    97 Cal. App. 4th 740 (2002)....................................................................... 19

*City of Oakland v. Oakland Raiders*
    203 Cal. App. 3d 78 (1988).................................................................. 15, 19

*Craft v. Cnty. of San Bernardino*
    624 F. Supp. 2d 1113 (C.D. Cal. 2008)...............................................passim

*Davis v. J.P. Morgan Chase & Co.*
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................................... 20

*Faulkner v. ADT Security Servs., Inc.*
    706 F.3d 1017 (9th Cir. 2013).................................................................... 11

*Fischel v. Equitable Life. Assur. Soc'y*
    307 F.3d 997 (9th Cir. 2002)........................................................................ 7

*Fischer v. SJB-P.D. Inc.*
    214 F.3d 1115 (9th Cir. 2000).................................................................... 16

*Fraley v. Facebook, Inc.*
    No. C 11-1726 RS, 2013 U.S. Dist. LEXIS 124023 (N.D. Cal. Aug. 26,
    2013).............................................................................................................. 7

*Garner v. State Farm Mutual Auto. Ins. Co.*
    No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr.
    22, 2010)................................................................................................ 10, 13

*Glass v. UBS Fin. Servs., Inc.*
    331 Fed. Appx. 452 (9th Cir. 2009) .......................................................... 14

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998)................................................................8, 9

*Hataishi v. First Am. Home Buyers Prot. Corp.*
    223 Cal. App. 4th 1454 (2014)...................................................................11

*Hensley v. Eckerhart*
    461 U.S. 424 (1983) ...................................................................................16

*In re Businessland Sec. Litig.*
    No. 09-CV-20476-RFP, 1991 U.S. Dist. LEXIS 8962 (N.D. Cal. June
    14, 1991).....................................................................................................21

*In re Cellphone Fee Termination Cases*
    186 Cal. App. 4th 1380 (2010)...................................................................23

*In re Consumer Privacy Cases*
    175 Cal. App. 4th 545  (2009)..................................................................7, 9

*In re Netflix Privacy Litig.*
    No. 11-cv-00379 EJD, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar.
    18, 2013).....................................................................................................23

*In re Oracle Sec. Litig.*
    852 F. Supp. 1437 (N.D. Cal. 1994) ...........................................................8

*In re Pacific Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)........................................................................14

*In re Rite Aid Corp. Sec. Litig.*
    362 F. Supp. 2d 587 (E.D. Pa. 2005) .........................................................20

*In re Sutter Health Uninsured Pricing Cases*
    171 Cal. App. 4th 495 (2009).....................................................................16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
    19 F.3d 1291 (9th Cir. 1994)............................................................8, 13, 16

*Johansson-Dohrmann v. Cbr Sys., Inc.*
    No. 12-cv-1115-MMA, 2013 U.S. Dist. LEXIS 103863 (S.D. Cal. July
    24, 2013).......................................................................................................9

*Kerr v. Screen Extras Guild, Inc.*
    526 F.2d 67 (9th Cir. 1975)........................................................................15

*Ketchum v. Moses*
    24 Cal. 4th 1122 (2001).......................................................................15, 16

*Kona Enter., Inc. v. Estate of Bernice Pauahi Bishop*
    229 F.3d 877 (9th Cir. 2000)........................................................................6

*Laguna v. Coverall N. Am., Inc.*
    No. 12-55479, 2014 U.S. App. LEXIS 10259 (9th Cir. June 3, 2014).....15, 21

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

*Lopez v. Youngblood*
  No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289 (E.D. Cal.
  Sept. 1, 2011) ............................................................................................. 8

*Maley v. Del Global Techs. Corp.*
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................... 20

*Michael–Regan Co., Inc. v. Lindell*
  527 F.2d 653 (9th Cir. 1975) ..................................................................... 6

*Mills v. Electric Auto-Lite Co.*
  396 U.S. 375 (1970) ................................................................................. 21

*Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*
  660 F.2d 9 (2d Cir. 1981) ........................................................................... 4

*Palmer v. Nigaglioni*
  508 Fed. Appx. 658 (9th Cir. 2013) ........................................................ 14

*Pincay Invs. Co. v. Covad Commc'ns Grp.*
  90 Fed. Appx. 510 (9th Cir. 2004) .......................................................... 14

*Radcliffe v. Experian Info. Solutions Inc.*
  715 F.3d 1157 (9th Cir. 2013) ................................................................. 23

*Rausch v. Hartford Fin. Servs. Group*
  No. 01–CV–1529–BR, 2007 U.S. Dist. LEXIS 14740 (D. Or. Feb. 26,
  2007) ........................................................................................................ 23

*Razilov v. Nationwide Mut. Ins. Co.*
  No. 01-CV-1466-BR, 2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13,
  2006) ........................................................................................................ 23

*Rodriguez v. West Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ................................................................... 22

*Serrano v. Priest*
  20 Cal. 3d 25 (1977) ................................................................................... 7

*Six (6) Mexican Workers v. Arizona Citrus Growers*
  904 F.2d 1301 (9th Cir. 1990) ............................................. 8, 9, 10, 12

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ................................................................ 9, 22

*Stokus v. Marsh*
  217 Cal. App. 3d 647 (1990) ................................................................... 16

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir. 1993) ............................................................ 2, 12, 14

*Van Vranken v. Atlantic Richfield Co.*
  901 F. Supp. 294 (N.D. Cal. 1995) .................................................... 20, 23

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

*Vedachalam v. Tata Consultancy Servs., Ltd.*
    No. C 06-0963 CW, 2013 U.S. Dist. LEXIS 100796 (N.D. Cal. July 18, 2013) .......................................................................................... 14

*Vincent v. Brand*
    557 F.2d 759 (9th Cir. 1977) ............................................................ 21

*Vizcaino v. Microsoft*
    290 F.3d 1043 (9th Cir. 2002) ................................................... passim

*Vo v. Las Virgines Mun. Water Dist.*
    79 Cal. App. 4th 440 (2000) ...................................................... 15, 16

*Webb v. Bd. of Edu.*
    471 U.S. 234 (1985) ......................................................................... 16

*Weeks v. Baker & McKenzie*
    63 Cal. App. 4th 1128 (1998) ........................................................... 15

*Weiner v. ARS Nat'l Servs.*
    887 F. Supp. 2d 1029 (S.D. Cal. 2012) ............................................ 11

*Wershba v. Apple Computer, Inc.*
    91 Cal. App. 4th 224 (2001) ....................................................... 16, 20

## STATUTES

Cal. Civ. Proc. Code § 1021 ..................................................................... 7

Cal. Penal Code § 630 .............................................................................. 1

## TREATISES

*Manual for Complex Litigation*, § 14.121 (4th ed. 2004) ..................... 8, 10

Newberg & Conte, *Newberg on Class Actions* (4th ed. 2002) ................... 4

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs in these consolidated class actions are cardholders of Capital One who received telephone calls from it. The California Plaintiffs allege that Capital One recorded those calls but did not warn Plaintiffs about the recordings, thereby violating the plain terms of California's Privacy Act (Cal. Penal Code §§ 630, et seq.; the "Privacy Act"). Plaintiffs' Second Amended Consolidated Class Action Complaint [Doc. No. 132] asserts causes of action for invasion of privacy in violation of the Privacy Act, as well as similar statutes in Florida, Maryland, Nevada, and New Hampshire, which require all parties to consent to the recording of a telephone call. Specifically, Plaintiffs allege that Capital One, having failed to obtain such consent at the outset of each call, is liable to Plaintiffs and the members of the proposed Class who received outbound calls from Capital One. Through this lawsuit, Plaintiffs sought to enforce and protect their right to privacy. Capital One, of course, vigorously denied all of these allegations.

The law firms representing the Plaintiffs[1] faced the daunting task of taking on a billion dollar company with unlimited resources to litigate. Indeed, the many dispositive motions filed by Defendant – and successfully opposed by the Plaintiffs – demonstrate the resources that were available to Capital One. However, and despite the many challenges and obstacles they faced, the attorneys for the Plaintiffs were able to persevere and achieve the Settlement, which provides significant benefits to the Class, as explained more fully below.

Through this Motion, Plaintiffs request that the Court approve their application for $750,000 in attorneys' fees, $16,189.34 in litigation costs, and

---

[1] Those firms are: Kiesel Law LLP, Law Offices of Kenneth M. Lipton, The Wentz Law Firm, Cohen Milstein Sellers and Toll PLLC, Kearney Littlefield, LLP, Ringler Schmidt, A Law Corp., Eaton Wolk PL, and the Law Offices of Leo W. Desmond.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

$25,000 in incentive awards for each of the Plaintiffs. The requested attorneys' fees represent 25% of the Settlement Fund, which is the standard "benchmark" in the Ninth Circuit for common fund cases. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The reasonableness of Plaintiffs' fee request is confirmed by a lodestar cross-check which reflects that, rather than a lodestar multiplier, Class Counsel seek a reduction of more than 30%, based on their hourly rates. Plaintiffs' requested litigation costs, which were advanced by Class Counsel, were reasonably incurred and necessary to achieve the favorable result in this case. Finally, Plaintiffs' requested incentive awards are reasonable to reward them for the work they performed and their service to the Class. As detailed herein, Plaintiffs' request for attorneys' fees, litigation costs, and incentive awards comports with the applicable law and is well-justified by the facts of this case.

## II.    PERTINENT PROCEDURAL HISTORY

Multiple class actions were initially filed and then consolidated. Thereafter, Defendant filed a Motion to Dismiss the operative Consolidated Complaint. That Motion was granted in part and denied in part. After Plaintiffs filed their First Amended Consolidated Class Action Complaint to address the issues raised by the Court in its first Motion to Dismiss ruling, Defendant again moved for dismissal. That Motion was denied. Defendant then moved for Summary Judgment, which too was denied. Defendant moved to have the Court reconsider its Summary Judgment Order, and that Motion was also denied. Finally, Plaintiffs' Motion for Class Certification was fully briefed at the time settlement negotiations occurred but in light of the Settlement, the Motion was not heard.

## III.    THE NATURE OF THE SETTLEMENT NEGOTIATIONS

Plaintiffs' counsel in this case are, or have also been, counsel of record in several other putative class actions pending in this District and in California state courts which involve the surreptitious recording of outbound telephone calls to

California residents. *See, e.g., Stone v. Howard Johnson Int'l, Inc., et al.*, Case No. 12-cv-01684 (pending before the Honorable Philip S. Gutierrez); *Mount v. Wells Fargo Bank, N.A.,* California Superior Court, Los Angeles County, Case No. BC395959 (pending before the Honorable Amy D. Hogue); *Greenberg v. E-TRADE Fin. Corp.*, California Superior Court, Los Angeles County, Case No. BC360102; *Raymond v. CarsDirect.com Inc.*, California Superior Court, Los Angeles County, Case No. BC256282. Class Counsel's experience in such litigation has enabled them to be very conversant with the various legal and factual issues presented in this case and to approach settlement negotiations with a wealth of relevant knowledge gained from the other litigation.

Only after the above-described, hard-fought litigation, the parties retained Justice Panelli to serve as a third-party neutral. A full-day mediation session, and multiple, smaller negotiation sessions between the parties thereafter taking place on the phone, ultimately resulted in the Settlement. Declaration of Paul R. Kiesel, executed August 12, 2014, ("Kiesel Decl.") ¶ 6.

## IV.   **SETTLEMENT TERMS**

The proposed settlement Class consists of all persons in California, Florida, Maryland, Nevada, and New Hampshire (the "Covered States") who received one or more telephone calls from and spoke with a representative of Capital One between July 13, 2006, and March 31, 2012, and were not provided with notice that the call may be recorded or monitored. *See* Settlement Agreement ¶ 1(f). So as to compensate those Class Members, Capital One will make available a Common Fund[2] of $3,000,000 in cash (less attorneys' fees, costs, and the amount awarded to

---

[2] Pursuant to the Settlement Agreement Capital One is to establish the Common Fund by using, at its discretion, cash, statement credits, and/or debt forgiveness that, in the aggregate, amount to $3,000,000. Settlement Agreement ¶ 3.1. Capital One has now agreed that the Common Fund, and all payments under the Settlement, shall (footnote continued)

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

the Class Representatives, if approved by the Court) as follows:

    a.    The Individual Settlement Amount shall be calculated by taking the Common Fund less the amount awarded by the Court to Class Counsel as attorneys' fees and costs, less the amount awarded to the Class Representatives, and dividing that remainder by the number of Authorized Claimants. Settlement Agreement ¶ 3.3; and

    b.    Each Authorized Claimant shall then be entitled to a one-time distribution payment from the cash portion of the Common Fund which is equal to the Individual Settlement Amount. This payment shall be in the form of a check issued by the Settlement Administrator or Capital One. Settlement Agreement ¶¶ 3.4 - 3.6.

## V.    <u>NARROWLY TAILORED RELEASE</u>

The Settlement Agreement contains a narrowly tailored release that is specifically limited to claims arising out of the allegations in this case relating to the intercepting, monitoring and/or recording of telephone calls or other communications. *See* Settlement Agreement ¶ 14.1. The release comports with the applicable law, which holds that a class action lawsuit may release all claims "that may arise out of the transactions or events pleaded in the complaint." *See* Conte & Newberg, 4 *Newberg on Class Actions* (4th ed. 2010) ("Newberg") § 12:15, at 312; *see also Nat'l Super Spuds, Inc. v. New York Mercantile Exch.,* 660 F.2d 9, 16-18 (2d Cir. 1981).

## VI.    <u>ATTORNEYS' FEES AND COSTS AND ENHANCEMENT AWARDS</u>

The Settlement Agreement allows Class Counsel to make an application to the Court for an award of attorneys' fees and costs, payable from the Common Fund. As those amounts were not discussed during mediation, Capital One may

_____

be in cash.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

1  dispute or contest the amount of attorneys' fees and litigation expenses and costs
2  requested by Class Counsel. Settlement Agreement ¶ 3.8(a). The Settlement
3  Agreement does not contain a "clear sailing" provision.

4      The Plaintiffs, Stanley Nader and Jarett Olson, are allowed to make an
5  application to the Court for an enhancement award of $25,000 each. That amount is
6  intended as compensation for the telephone calls they claim were recorded without
7  notice or consent as well as their compensation for instituting, prosecuting and
8  bearing the laboring oar and risk of this litigation as Class Representatives including
9  their responding to extensive written discovery, sitting for their depositions,
10 communicating with Class Counsel throughout the litigation as well as Plaintiff
11 Nader's physical attendance at the mediation, and Plaintiff Olson's telephonic
12 participation therein. Settlement Agreement ¶ 3.7. Plaintiff Albert O. Benkert,
13 represented by Eaton Wolk PL and the Law Offices of Leo W. Desmond, who filed
14 a class action Complaint against Capital One in the Circuit Court of the 11th Judicial
15 Circuit in Miami-Dade County, Florida (Case No. 12-23018 CA 13), seeks a similar
16 award for his efforts in that action.

17 **VII.  *CY PRES* DISTRIBUTION OF COMMON FUND REMAINDER**

18     In the event that any portion of the Common Fund remains unclaimed, or any
19 check sent to any Authorized Claimant remains uncashed for more than 180 days
20 after issuance, then such unclaimed or uncashed funds will become part of the
21 Common Fund for *cy pres* distribution to the Berkman Center for Internet & Society
22 at Harvard University and the Electronic Frontier Foundation, in equal amounts.

23     Under no circumstances will any portion of the Common Fund revert to
24 Capital One.

25 **VIII. PRELIMINARY SETTLEMENT APPROVAL, NOTICE AND CLASS**
26 **REACTION TO DATE**

27     On April 30, 2014, the Court entered an Order that granted preliminary
28 approval of the Settlement, directed notice to Class Members, and scheduled a

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

hearing on final approval. Doc. No. 131. The Preliminary Approval Order was then amended twice by stipulation. On May 30, 2014, notice was ordered to be given by mail to those individuals who previously indicated to Defendant that they did not want to communicate by e-mail. Doc. No. 136. On July 21, 2014, the exclusion deadline was extended to August 1, 2014. Doc. No. 139.

As of August 10, 2014, a total of 31,890[3] claims have been submitted, no Class Members have objected to the Settlement and only 15 have chosen to exclude themselves from the Settlement. Atkinson Dec. ¶¶ 25-27. Thus, the reaction of the Class to the proposed Settlement has been overwhelmingly positive.

## IX.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND JUSTIFIED AND SHOULD BE APPROVED BY THE COURT

### A.   California Law Controls Plaintiffs' Fee Request

"Federal courts are required to apply state law in diversity actions with regard to the allowance or disallowance of attorney fees." *Bank of Am. v. Micheletti Family P'ship*, No. C 08–2902 JSW (JL), 2009 U.S. Dist. LEXIS 116893, at *6 (N.D. Cal. Feb. 26, 2009) (quoting *Michael–Regan Co., Inc. v. Lindell*, 527 F.2d 653, 656 (9th Cir. 1975)); *Vizcaino v. Microsoft*, 290 F.3d 1043, 1047 (9th Cir. 2002). A federal court sitting in diversity applies the law of the forum state regarding attorney fee awards. *See, e.g., Kona Enter., Inc. v. Estate of Bernice Pauahi Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). Because this is a diversity case brought pursuant to California law, California law governs Plaintiffs' request for attorneys' fees.[4]

---

[3] Direct notice was given by postcard and email to 1,896,044 Class Members, of which 1,218,739 were sent by e-mail and 677,305 by postcard. Declaration of William G. Atkinson, executed August 12, 2014 ("Atkinson Decl.") ¶ 21. Follow up emails were also sent to individuals and notice was also published in the regional editions of USA Today in all relevant markets. *Id.*

[4] As explained herein, the analysis under federal and California law is essentially the same in a common fund case such as this, and the requested amounts here are
(footnote continued)

Under California law, Plaintiffs may recover attorneys' fees in this case pursuant to either the "common fund" or the "substantial benefit" doctrines. Both of these doctrines are non-statutory exceptions to the general American rule regarding attorneys' fees derived from case law. *See Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977); Cal. Civ. Proc. Code § 1021, *et seq*. Under the "common fund" rule, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund." *Serrano*, 20 Cal. 3d at 34. Under the "substantial benefit" rule, "when a class action … results in the conferral of substantial benefits, whether of a pecuniary or nonpecuniary nature, … [the] defendant may, in the exercise of the court's equitable discretion, be required to yield some of those benefits in the form of an award of attorney's fees." *Id.* at 34; 38-42. Plaintiffs here are entitled to recover attorneys' fees under either doctrine because they have created a fund for the benefit of the Class and have conferred substantial benefits upon the Class Members.

**B.**    **California and Federal Law Indicate that the Court Should Apply the Percentage-of-Fund Method to Calculate Plaintiffs' Attorneys' Fees**

In common fund cases, under both California and federal law, courts have discretion to apply either a percentage-of-the-fund method or the lodestar method for calculating an attorneys' fee award. *Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2013 U.S. Dist. LEXIS 124023, at *5 (N.D. Cal. Aug. 26, 2013) (citing *Fischel v. Equitable Life. Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)); *see also Vizcaino*, 290 F.3d at 1047; *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 558 (2009); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir.

_____

reasonable and appropriate under either law.

1994) ("*WPPSS*"). The choice "depends on the circumstances." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Although the Court has discretion to use either method, the Ninth Circuit has recognized that in common fund cases, "the *primary* basis of the fee award remains the percentage method." *Vizcaino*, 290 F.3d at 1050 (emphasis added); *see also Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at *8 (E.D. Cal. Sept. 1, 2011); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1116, 1123-24 (C.D. Cal. 2008) (citing *Vizcaino*, at 1050)). Indeed, "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases." *Manual for Complex Litigation*, § 14.121 (4th ed. 2004) (citing, *e.g.*, *WPPSS*, 19 F.3d at 1295)).

The percentage-of-fund method is favored in common fund cases for two reasons. First, it "more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Lopez*, 2011 U.S. Dist. LEXIS 99289, at *9; *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1454 (N.D. Cal. 1994). Second, it encourages early settlement of meritorious cases and "ensur[es] that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Manual for Complex Litigation*, § 14.121. In comparison, the lodestar method is usually better suited for non-common fund cases, such as "employment, civil rights and other injunctive relief class actions." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). In such cases, "there is no way to gauge the net value of the settlement or any percentage thereof." *Id.* When the percentage-of-fund method is used, courts can – but are not required to – use the lodestar method as a "cross-check." *Vizcaino*, 290 F.3d at 1050 & n.5. (*See* Part IX.D, *infra*, for discussion of the lodestar cross-check.)

The percentage-of-fund method is the most appropriate way to determine Class Counsel's fees here. Indeed, the percentage method is especially appropriate

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

in cases such as this, in which "the class benefit can be monetized with a reasonable degree of certainty." *Johansson-Dohrmann v. Cbr Sys., Inc.*, No. 12-cv-1115-MMA, 2013 U.S. Dist. LEXIS 103863, at *24 (S.D. Cal. July 24, 2013) (citing *Consumer Privacy Cases*, 175 Cal. App. 4th at 556-57). Pursuant to the Settlement, Capital One agreed to create a Common Fund of $3 million available to Class Members; thus, the value of the Fund is certain. As explained below, the requested fees here are reasonable and appropriate relative to the amount of the Fund.

### C.   Class Counsel Seek the Ninth Circuit's Benchmark of 25% of the Fund

Courts in the Ninth Circuit use a "25% benchmark rate" as the "starting point for analysis" of the percentage-of-fund award. *Vizcaino*, 290 F.3d at 1048; *see also Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1029; *Johansson-Dohrmann*, 2013 U.S. Dist. LEXIS 103863, at *24 (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556 n.13) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent."). Courts are further permitted to adjust the benchmark figure up or down in order to fit the individual circumstances of each case. *Six (6) Mexican Workers*, 904 F.2d at 1311; *Vizcaino*, 290 F.3d at 1048.

The Ninth Circuit has identified certain factors to be considered in determining whether to award the benchmark or some other amount. These include: (1) the degree of success counsel achieved for the class; (2) the risks involved in the litigation, including the skill required and the quality of the work performed to overcome those risks; (3) the contingent nature of the fee and the burdens borne by class counsel in taking on the litigation; and (4) the range of awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50. While Ninth Circuit courts often affirm fee awards exceeding the 25% benchmark, *see, e.g., Garner v. State Farm Mutual Auto. Ins. Co.*, No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482, at *2 (N.D. Cal. Apr.

22, 2010) ("[a] fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund cases"), and while Plaintiffs submit the circumstances in this case could justify an upward adjustment to the benchmark, Class Counsel are only seeking the benchmark amount of 25% as was represented to the Court in their Motion for Preliminary Approval. *See*, Pls.' Mot. for Prelim. Approval of Class Settlement [Doc. No. 118] 6:17-21.

As discussed in detail below, each of the above five factors supports the reasonableness of Class Counsel's request for the benchmark amount.

### 1.    A Successful Result for the Class Was Achieved

Courts place great weight on the degree of success counsel achieved for the class. *See, e.g., Vizcaino*, 290 F.3d at 1048 (considering counsel's "exceptional results"); *Six (6) Mexican Workers*, 904 F.2d at 1311 (noting plaintiffs' "substantial success"). In general, courts equate "success" with "the size of the fund created, because 'a common fund is itself the measure of success . . . .'" *Manual for Complex Litigation*, §14.121; *see also Garner*, 2010 U.S. Dist. LEXIS 49482, at *3 (awarding a 30% fee, in part, because the $15 million fund represented "outstanding monetary results for the Class members"). Here, Class Counsel obtained a Fund of $3 million for the Class, and Class Members who make a claim will receive a check for their pro-rata share of the Fund. Indeed, the Settlement here represents a particularly strong result for the Class in light of the challenges and risks Plaintiffs faced in this case (discussed in further detail below).

### 2.    The Case Involved Complex Legal Issues and Significant Risks, Requiring Skill and Superior Work to Overcome

The next factor justifying an award of the benchmark amount is the complexity of the issues and degree of risk faced by Class Counsel, as well as the skill required and work performed in order to successfully overcome those risks. *See Vizcaino*, 290 F.3d at 1048; *Six (6) Mexican Workers*, 904 F.2d at 1311; *Craft*, 624 F. Supp. 2d at 1117.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

This case involved numerous complex issues of fact and law, and presented significant risks for Class Counsel. In particular, the legal claims asserted herein have not always been met with successful results in federal and state courts. *See*, *e.g.*, *Faulkner v. ADT Security Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (plaintiff's allegations insufficient to infer an objectively reasonable expectation of confidentiality on a phone conversation he had with defendant); *see also Weiner v. ARS Nat'l Servs.*, 887 F. Supp. 2d 1029, 1033 (S.D. Cal. 2012) (circumstances surrounding plaintiff's phone conversation with defendant showed he did not have "an objectively reasonable expectation that the conversation was not being recorded."); *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454 (2014) (denying class certification in call recording privacy class action). And, Capital One's Opposition to the Class Certification Motion here makes clear that it would have challenged a class being certified on many grounds, including that variations among the Class Members' individual expectations of whether their calls were being recorded preclude certification under Rule 23(b)(3). *See* Opp'n to Pls.' Mot. for Class Cert. [Doc. No. 109] at 13-19.

That Class Counsel were able to achieve the results they did for the Class despite these risks speaks to the level of skill Class Counsel brought to bear in this case. Negotiating the details of the Settlement was protracted and difficult, requiring not only a full-day mediation session but then subsequent numerous conference calls. *See* Kiesel Decl. ¶ 6. And the eventual resolution achieved here was only after significant discovery was undertaken in this action including, but not limited to, numerous sets of interrogatories and requests for production propounded by Capital One on each Plaintiff, and Plaintiffs' propounding of interrogatories and requests for production on Capital One, resulting in Capital One's production of nearly 3,000 pages of documents. Additionally, the depositions of each Plaintiff were taken, and Capital One's corporate designee on matters relating to the identities of persons Capital One called and recorded was taken in Virginia. Kiesel Decl. ¶ 5. This

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

information provided the parties with sufficient evidence to evaluate the strengths and weaknesses of Plaintiffs' claims and the benefits of the proposed Settlement. *Id.* And, it is also significant that this action has been subject to extensive motion practice before class certification was sought, which included multiple dispositive motions, such as the two motions to dismiss and for summary judgment. Kiesel Decl. ¶ 6. Thus, the parties were well informed not only of the bases for the claims and allegations herein, but also of Capital One's defenses.

Further, even after the parties executed the Settlement Agreement, Class Counsel continued to work diligently on this case, monitoring the Settlement Administrator and identifying and dealing with a series of issues related to the notice and claims process, as well as responding to inquiries from Class Members. *See* Kiesel Decl. ¶ 9.

In short, it is submitted that "prosecuting this case required an extraordinary commitment of time, resources, and energy from Class Counsel, and the relief achieved simply would not have been possible but for the commitment and skill of Class Counsel." *Garner*, 2010 U.S. Dist. LEXIS 49482, at *5. Even though all of this favors an increase in the benchmark rate (*Id.* at *2-3), Class Counsel are only seeking an award of the benchmark. A 25% fee is well-justified for Class Counsel's work in this case.

3. **Class Counsel Took on a Heavy Contingent Risk, Advanced All Litigation Costs, and Worked on this Case Without Any Guarantee of Success**

The third factor the Court should consider is the contingent nature of the case and the burdens borne by Class Counsel in taking it. *Vizcaino*, 290 F.3d at 1050 (citing *Torrisi*, 8 F.3d at 1377); *Six (6) Mexican Workers*, 904 F.2d at 1311. Relevant to this inquiry is the contingency risk, the cost and length of the litigation, and whether counsel were forced to forego other significant legal work. *Id.*; *see also Craft*, 624 F. Supp. 2d at 1120. This is because courts recognize that "the public

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Garner*, 2010 U.S. Dist. LEXIS 49482, at *5 (citing *Vizcaino*, 290 F.3d at 1050; *WPPSS*, 19 F.3d at 1299). Such a practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney. *See WWPPS*, 19 F.3d at 1299-1300. Indeed, "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *Id*. at 1299. Of course, here, far from receiving a premium over their normal hourly rates, Counsel are seeking a reduction of more than 30% off of them.

As the accompanying declarations of Class Counsel attest, Class Counsel have been working diligently on this case for over two years on a pure contingency basis with no guarantee of recovery. Class Counsel have advanced all out-of-pocket expenses, including mediation costs. All told, as of August 8, 2014, Class Counsel have incurred more than $16,189.34 in unreimbursed, out-of-pocket costs, all of which were advanced with no promise of repayment. *See* Kiesel Decl. ¶¶ 16-17; Declaration of Andrew N. Friedman, executed August 12, 2014, ("Friedman Decl.") ¶ 12; Declaration of Kenneth M. Lipton, executed August 12, 2014, ("Lipton Decl.") ¶ 12; Declaration of Prescott W. Littlefield, executed August 12, 2014, ("Littlefield Decl.") ¶ 10; and Declaration of Jerome L. Ringler, executed August 12, 2014, ("Ringler Decl.") ¶¶ 12; *see also*, Declaration of Doug F. Eaton, executed August 12, 2014, ("Eaton Decl.") ¶ 11. Indeed, Class Counsel faced the possibility that they would spend years litigating this case and recover nothing. Class Counsel's high-risk and successful efforts on behalf of the Class further warrant their requested 25% benchmark fee.

/ / /

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

### 4. The Requested Fee Is Well in Line with the Range of Percentage Fee Awards Approved by the Ninth Circuit and Its District Courts

Finally, courts consider "the range of fee awards out of common funds of comparable size." *Vizcaino*, 290 F.3d at 1049-50. "In light of the many cases in this circuit that have granted fee awards of 30% or more, the requested fee is well within the usual range of percentages awarded in similar cases." *Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2013 U.S. Dist. LEXIS 100796, at *4-5 (N.D. Cal. July 18, 2013). The Ninth Circuit has also frequently affirmed awards of 25% or more in common fund cases. *See, e.g.*, *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33.3%); *Palmer v. Nigaglioni*, 508 Fed. Appx. 658, 658 (9th Cir. 2013) (28%); *Vizcaino*, 290 F.3d at 1048-50 (28%); *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 457 (9th Cir. 2009) (25%); *Pincay Invs. Co. v. Covad Commc'ns Grp.*, 90 Fed. Appx. 510, 511-12 (9th Cir. 2004) (25%); *Torrisi*, 8 F.3d 1370 (9th Cir. 1993) (25%).

In this case, the proposed 25% fee is well within the range of other fee awards granted in comparable cases. Plaintiffs' request for the benchmark amount should be approved because of the outstanding results obtained by Class Counsel, the risks and issues Class Counsel faced and overcame, the extensive and high-quality work Class Counsel performed, and the burdens Class Counsel bore in pursuing the litigation on a pure contingency basis. For all of these reasons, Plaintiffs' request for a 25% fee is reasonable.

### D.   A Lodestar Cross-Check Confirms that Plaintiffs' Requested 25% Fee Is Reasonable

The lodestar method "measures the lawyers' investment of time in the litigation" and "provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. Although this cross-check is not required, it confirms the reasonableness of the requested 25% fee. *See Laguna v. Coverall N. Am., Inc.*,

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

No. 12-55479, 2014 U.S. App. LEXIS 10259, *8 (9th Cir. June 3, 2014) (stating that "[g]enerally, courts use a benchmark figure of 25% to gauge the reasonableness of an award under the percentage-of-recovery method, which is most appropriate in common fund settlement cases"); *Craft*, 624 F. Supp. 2d at 1122 ("[a] lodestar cross-check is not required in this circuit").

Under the lodestar method, Class Counsel's lodestar serves as the "touchstone" for the fee award. *See Vo v. Las Virgines Mun. Water Dist.*, 79 Cal. App. 4th 440, 445-46 (2000). The court may then adjust the lodestar amount based on a number of factors, including: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001). Other relevant factors include "the time limitations imposed by the litigation, the amount at stake, and the result obtained by counsel." *City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 83 (1988); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Class Counsel's requested 25% fee represents not even a modest multiplier on their lodestar based on their current hourly rates. Rather, it is a negative multiplier. As a result, it would be difficult for anyone to conclude that seeking a fee award of less than the total lodestar is unreasonable for Class Counsel's skillful handling of the difficult factual and legal issues presented, the significant contingent risks in this case, and the quality of the result achieved.

## 1.    Class Counsel's Lodestar Is Reasonable and Compensable

"Under the lodestar method, a party who qualifies for a fee should recover for all hours reasonably spent unless special circumstances would render an award unjust." *Vo*, 79 Cal. App. 4th at 446; *see also Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998) ("[A]n attorney who takes on [a complex] case can anticipate receiving full compensation for every hour spent litigating a claim against

even the most polemic opponent."); *Ketchum,* 24 Cal.4th at 1132. Compensable activities under the lodestar method include both pre-litigation activities (*e.g.*, interviewing the client, investigating the facts, researching the law, and preparing the initial pleading) and litigation activities (*e.g.*, conducting discovery, conferring with clients, drafting pleadings, making court appearances, travel time, and settlement negotiations). *Webb v. Bd. of Edu.*, 471 U.S. 234, 243 (1985); *Stokus v. Marsh*, 217 Cal. App. 3d 647, 655-56 (1990).

The first step employed in awarding fees under the lodestar method is to calculate the number of hours of work reasonably performed at a reasonable hourly rate. *Vo*, 79 Cal. App. 4th at 440. Class Counsel's lodestar can be calculated in one of two ways: "(1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement." *WPPSS*, 19 F.3d at 1305. It is well established that in moving for fees, counsel is "not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Instead, counsel need only "identify the general subject matter of his time expenditures." *Id.*; *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("a summary of the time spent on a broad category of tasks such as pleadings and pretrial motions" met "basic requirement" of documentation). The court can accept declarations of counsel setting forth the hours worked and tasks performed. *See In re Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 511-12 (2009) ("We see no reason why [the court] could not accept the declarations of counsel attesting to the hours worked, particularly as he was in the best position to verify those claims by reference to the various proceedings in the case."); *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 254-55 (2001) (permitting fee awards in the absence of detailed time sheets).

That said, Class Counsel were mindful of this Court's Standing Order relating to fees and how they should be presented to the Court. And, as a result, complied

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

with that Order. *See* Kiesel Decl. Ex. 3. As shown by those records, as of August 8, 2014, Class Counsel spent a total of 2,220.1 hours working on this case and incurred a combined lodestar of $1,158,990.50 based on their hourly rates. A breakdown of these fees and hours between the law firms working on this case is as follows:

| Class Counsel | Hours | Lodestar |
|---|---|---|
| Kiesel Law LLP | 1,167.6 | $609,502.50 |
| Law Offices of Kenneth M. Lipton | 258.1 | $96,787.50 |
| The Wentz Law Firm | 42.6 | $28,840.00 |
| Cohen Milstein Sellers and Toll PLLC | 190.0 | $101,660.50 |
| Kearney Littlefield, LLP | 258.8 | $145,960.00 |
| Ringler Schmidt, A Law Corp. | 153.4 | $87,490.00 |
| Eaton Wolk PL | 121.3 | $78,845.00 |
| Law Offices of Leo W. Desmond | 28.3 | $9,905.00 |
| **Total** | **2,220.1** | **$1,158,990.50** |

The work performed, hours, and lodestar for each of the above law firms is set forth in the concurrently filed declarations of Class Counsel. *See* Kiesel Decl. ¶¶ 8-9, 14; Friedman Decl. ¶¶ 7, 10; Lipton Decl. ¶¶ 6, 10; Littlefield Decl. ¶¶ 4, 8; Ringler Decl. ¶¶ 7, 10; Declaration of Richard B. Wentz, executed August 12, 2014, ("Wentz Decl.") ¶¶ 7, 10; Eaton Decl. ¶ 9; Declaration of Leo W. Desmond, executed August 12, 2014, ("Desmond Decl.") ¶ 9. Class Counsel will spend additional time responding to Class Member communications and objections (if any), continuing to supervise the claims process, and preparing for and attending the

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

1   Fairness Hearing on November 3, 2014.[5] Kiesel Decl. ¶ 10.

2      The declarations of Class Counsel detail the amount of work that was

3   necessary in order to secure a successful result on behalf of the Class Members at

4   every stage of this litigation, including: (1) pre-litigation research and investigation;

5   (2) litigation activities such as written discovery and attending depositions, drafting

6   the various iterations of Plaintiffs' complaints, oppositions to Defendant's multiple

7   dispositive motions, briefing on class certification, multiple court hearings; (3)

8   settlement related activities, including preparing for and attending the mediation,

9   drafting the mediation brief, negotiating, and finalizing the terms of the Settlement

10  Agreement; and (4) obtaining Court approval of the Settlement Agreement. *See*

11  Kiesel Decl. ¶¶ 8-9; Friedman Decl. ¶ 7; Wentz Decl. ¶ 7; Lipton Decl. ¶ 6;

12  Littlefield Decl. ¶ 4; Ringler Decl. ¶¶ 7; Desmond Decl. ¶¶ 2-3, 6; Eaton Decl. ¶¶ 2-

13  3, 6.

14      Class Counsel's efforts started before this case was filed and included

15  extensive investigation, research, and preparation for the filing of Plaintiffs' class

16  action complaint. Once this case was filed, Class Counsel worked together to form a

17  coordinated leadership group, drawing on their general experience in class action

18  and complex litigation, as well as their specific experience in privacy litigation such

19  as this matter. Class Counsel participated in extensive arm's-length negotiations

20  with Capital One to develop a settlement that obtained substantive relief for the

21  Class Members and adequately addressed their claims. Thereafter, Class Counsel

22  secured preliminary approval of the Settlement Agreement and designed a

23  comprehensive notice plan that provided Class Members with direct notice of the

24  Settlement by postcard and email and then by way of publication. Class Counsel

25

26  _____

27  [5] Class Counsel will submit, if necessary, supplemental declarations detailing this
    work performed prior to the hearing on this Motion.

28

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

ensured that the notice plan was properly disseminated to the Class Members and that Class Members could exercise their rights thereunder. Kiesel Decl. ¶ 9. And, in that regard, Class Counsel will continue their efforts on behalf of the Class Members in order to secure final approval of the Settlement.

Each hour expended by Class Counsel on this case has ultimately benefitted the Class Members, and Class Counsel's lodestar amount is reasonable and compensable.

### 2.   Class Counsel's Hourly Rates Are Reasonable and Have Been Approved by Other Courts

The test for the reasonableness of an attorney's hourly rate is based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210-11 (9th Cir. 1986); *Children's Hosp. & Med. Ctr. v. Bunt*, 97 Cal. App. 4th 740, 783 (2002). In performing this analysis, courts look to the experience and reputation of class counsel, the complexity of the issues involved, the geographic market in which the case is litigated, and other factors affecting the litigation. *Barjon v. Dalton,* 132 F.3d 496, 500-02 (9th Cir. 1997) (determining counsel's hourly rate based on prevailing rates charged in Sacramento); *Oakland Raiders*, 203 Cal. App. 3d at 82 (affirming a trial court's approval of an hourly rate that falls in line with the rates charged in the Bay Area).

In this case, the attorney declarations and supporting exhibits establish the basis and calculation for the hourly rates of the attorneys and paralegals at each firm who worked on the case. Each of the firms composing Class Counsel has experience handling class actions and complex litigation. *See* Kiesel Decl. ¶ 3; Friedman Decl. ¶¶ 4-5; Wentz Decl. ¶¶ 2-4; Lipton Decl. ¶¶ 2-3, 5; Littlefield Decl. ¶ 2; Ringler Decl. ¶¶ 4, 6; Eaton Decl. ¶ 4; Desmond Decl. ¶ 4. Additionally, some of the firms involved in this case are also involved in other Privacy Act litigation and have gained relevant experience that was critical in this case. Their experience was

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

invaluable in achieving an excellent result for the Class, and supports the reasonableness of Class Counsel's hourly rates. Class Counsel billed this case at their usual and customary hourly billing rates, which have been approved by other courts presiding over similar complex class action lawsuits, including cases pending in the Central District of California. *See* Kiesel Decl. ¶ 13; Friedman Decl. ¶ 9; Wentz Decl. ¶ 9; Lipton Decl. ¶ 9; Littlefield Decl. ¶ 7; Ringler Decl. ¶ 9; Eaton Decl. ¶ 8; Desmond Decl. ¶ 8. As a result, Class Counsel have established that their lodestar is reasonable and justified.

### 3. While a Lodestar Multiplier Is Commonly Granted in Class Actions, One Is Not Being Sought Here

Once calculated, the lodestar can be adjusted upward using a "multiplier" based on several factors, including: the novelty and difficulty of the litigation; Class Counsel's skill in handling it; the burdens imposed by taking on the case; the contingent nature of the fee award; and the quality of the results achieved. And, multipliers in the range of three to four are commonly approved in class action litigation. *See, e.g., Vizcaino*, 290 F.3d at 1050-54 (upholding a multiplier of 3.65 and noting multipliers as high as 19.6); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Wershba*, 91 Cal. App. 4th at 255 ("Multipliers can range from 2 to 4 or even higher."); *Been v. O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2011 U.S. Dist. LEXIS 115151, at *29-30 (E.D. Okla. Aug. 16, 2011) (citing a study "reporting average multiplier of 3.89 in survey of 1,120 class action cases"). In fact, some courts have approved multipliers vastly exceeding that range. *See, e.g., Craft*, 624 F. Supp. 2d at 1123 (awarding 5.2 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 587 (E.D. Pa. 2005) (awarding 6.96 multiplier); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding 5.3 multiplier); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding 4.65 multiplier).

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

Of course, in this case, far from seeking a multiplier, the total lodestar billed in this litigation exceeds $1.1 million, for more than 2100 hours of total work, and yet counsel seek a total fee of $750,000. A similar situation was addressed recently by the Ninth Circuit:

> The district court also correctly calculated the lodestar amount and reasonably concluded that the agreed upon award, $994,800, was appropriate. In its analysis, the district court noted that the case had been contentiously litigated for over two years, and that the report submitted by Plaintiffs' counsel showing that over 4,500 hours had been billed by six attorneys, a paralegal, and a law clerk was fair and accurate. Using that number, the district court calculated that the lodestar amount reached almost $3 million. At a third of the lodestar amount, the district court soundly concluded that the attorneys' fee award of $994,800 was reasonable.

*Laguna v. Coverall N. Am., Inc.*, 2014 U.S. App. LEXIS 10259, 7-8 (9th Cir. June 3, 2014). So too, this Court may "soundly conclude" that at a lodestar discount of more than 30%, the lodestar cross-check supports an award of the benchmark percentage. For all of these reasons, Class Counsel respectfully submit that their request for a 25% attorneys' fee award is reasonable.

### E.   Plaintiffs Should Be Reimbursed Their Litigation Costs

In addition to attorneys' fees incurred, attorneys in a class action may be reimbursed for costs incurred in the ordinary course of prosecuting a case. *See In re Businessland Sec. Litig.*, No. 09-CV-20476-RFP, 1991 U.S. Dist. LEXIS 8962, at *8 (N.D. Cal. June 14, 1991) (awarding class counsel $90,574.78 in costs and expenses in addition to attorneys' fees). Reasonable reimbursable litigation costs include, but are not limited to, the costs of document production, experts and consultants, depositions, notice, and travel expenses. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970) ("To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense."); *see also*, *Vincent v. Brand.*, 557 F.2d 759, 769 (9th Cir. 1977) ("The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve

a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

Here, Class Counsel have incurred $16,189.34 in litigation costs and expenses to date during the ordinary course of this litigation. *See* Kiesel Decl. ¶¶ 16-17; Friedman Decl. ¶ 12; Lipton Decl. ¶ 12; Littlefield Decl. ¶ 10; Ringler Decl. ¶ 12; *see also* Eaton Decl. ¶ 11. These expenses include all filing expenses, general litigation expenses, mediation-related expenses and travel expenses, that were all incurred in the normal course of business and were essential to the successful prosecution of this class action lawsuit. Counsel are entitled to apply to the Court for reimbursement of those expenses in addition to the attorneys' fees to be deducted from the Fund. Finally, should any additional expenses be incurred before the Final Approval hearing, they will be appropriately submitted by way of a subsequent filing.

### F.   <u>The Court Should Grant Incentive Awards to the Plaintiffs as Class Representatives</u>

District courts have the discretion to award incentive payments to named plaintiffs in class action litigation. *Staton*, 327 F.3d at 977 (9th Cir. 2003). "Incentive awards are fairly typical in class action cases . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Here, Plaintiffs request an incentive award of $25,000 each for the class representatives so as to compensate them for the violation of their privacy and for their work in the case including being in constant contact with counsel, actively participating throughout the discovery process including responding to extensive written discovery as well as attending their depositions, and taking an active role in mediation. *See* Kiesel Decl. ¶ 11; Lipton Decl. ¶ 7; Littlefield Decl. ¶ 5.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

The requested incentive awards for the class representatives comport with case law. *See, e.g., Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 U.S. Dist. LEXIS 150299, at *18-19 (N.D. Cal. Oct. 18, 2013) (approving a $10,000 incentive award); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13, 2006) (same); *Rausch v. Hartford Fin. Servs. Group*, No. 01–CV–1529–BR, 2007 U.S. Dist. LEXIS 14740 (D. Or. Feb. 26, 2007) (same); *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380 (2010) (same); *Van Vranken,* 901 F.Supp. at 300 (approving a $50,000 incentive award). These awards are justified by the time and effort the class representatives dedicated to this case and in recognition of their willingness to act as private attorneys general on behalf of the Class Members. *See In re Netflix Privacy Litig.*, No. 11-cv-00379 EJD, 2013 U.S. Dist. LEXIS 37286, at *32 (N.D. Cal. Mar. 18, 2013) (incentive awards recognized that class representatives "assumed the responsibilities and burdens of acting as representatives"). Again, the class representatives were actively engaged in the litigation, commented on and participated in the settlement process, and were advocates for the Class Members throughout the process.

Nothing in the record indicates that the proposed awards served as an inducement for the class representatives' support for the Settlement, or that there was any fraud or collusion. *See Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1166 (9th Cir. 2013) (holding that conditioning incentive awards on support for the settlement agreement creates incongruent interests between the class and the settling plaintiffs and creates a potential conflict of interest with the class). On the contrary, as a result of their efforts and their decision to bring the case, the Class Members will benefit. Thus, the incentive awards sought by Plaintiffs Nader, Olson and Benkert are justified and should be approved.

**X.   CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request an award of attorneys'

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

fees, litigation costs, and incentive awards in the amounts set forth above.

DATED: August 13, 2014          Respectfully submitted,

                                KIESEL LAW LLP


                                By:    /s/ Jeffrey A. Koncius
                                       PAUL R. KIESEL
                                       JEFFREY A. KONCIUS
                                       MATTHEW A. YOUNG

                                LAW OFFICES OF KENNETH M. LIPTON
                                       Kenneth M. Lipton, SBN 82342
                                       5900 Sepulveda Blvd., Suite 400
                                       Van Nuys, CA 91411
                                       Tel:  (818) 780-3562
                                       Fax: (818) 366-7097
                                       E-mail: *kenlipton998431@aol.com*

                                COHEN MILSTEIN SELLERS & TOLL PLLC
                                       Andrew N. Friedman
                                       [Admitted *Pro Hac Vice*]
                                       Douglas J. McNamara
                                       [Admitted *Pro Hac Vice*]
                                       1100 New York Avenue NW
                                       Suite 500 West
                                       Washington, DC 20005
                                       Tel:  (202) 408-4600
                                       Fax: (202) 408-4699
                                       E-mail: *afriedman@cohenmilstein.com*
                                               *dmcnamara@cohenmilstein.com*

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

THE WENTZ LAW FIRM
          Richard B. Wentz, SBN 120380
          Jean M. Wentz, SBN 139340
          33 Via Ricardo
          Newbury Park, CA 91320
          Tel:  (818) 269-8007
          Fax: (805) 480-9680
          E-mail: *rick.wentz@gmail.com*
                    *jean.wentz@gmail.com*


BRAUN LAW GROUP, P.C.
          Michael D. Braun, SBN 167416
          10680 Pico Blvd., Suite 280
          Los Angeles, CA 90064
          Tel:  (310) 836-6000
          Fax: (310) 836-6010
          E-mail: *mdb@braunlawgroup.com*

          Attorneys for Plaintiff, STANLEY NADER, on
          behalf of himself and all others similarly
          situated


KEARNEY LITTLEFIELD, LLP
          Thomas A. Kearney, SBN 90045
          Prescott  W. Littlefield, SBN 259049
          633 W. Fifth Street, 28th Floor
          Los Angeles, CA 90071
          Tel:  (213) 473-1900
          Fax: (213) 473-1919
          E-mail: *tak@kearneylittlefield.com*
                    *pwl@kearneylittlefield.com*

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RINGLER SCHMIDT, A LAW CORPORATION
Jerome L. Ringler, SBN 59918
Catherine Burke Schmidt, SBN 212827
233 Wilshire Boulevard, Suite 900
Santa Monica, CA 90401
Tel:  (310) 955-4105
Fax: (310) 955-4106
E-mail: *jlr@ringlerschmidt.com*
            *cbs@ringlerschmidt.com*

Attorneys for Plaintiff, JARETT OLSON, on
behalf of himself and all others similarly
situated

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION COSTS, AND
INCENTIVE AWARDS