Darrell Palmer (SBN 125147)
Law Offices of Darrell Palmer
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115
Email:  darrell.palmer@palmerlegalteam.com

Attorney for Objector Michelle Melton

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| STANLEY NADER, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CAPITAL ONE BANK (U.S.A.), N.A. and DOES 1 through 20, <br><br> Defendant. <br> ———————————————— <br><br> AND RELATED CONSOLIDATED CASES <br> ———————————————— | Case No. CV-12-01265-DSF (RZx) [Consolidated with Case Nos. CV-12-1772-DSF (RZx) and CV-12-4906-DSF (RZx)] <br><br> CLASS ACTION <br><br> **OBJECTION OF MICHELLE MELTON TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR** <br><br> Judge: Hon. Dale S. Fischer <br> Date: November 3, 2014 <br> Time: 1:30 p.m. <br> Crtrm.: 840 - Roybal |

# TABLE OF CONTENTS

A.    Summary of the Litigation and Settlement ………………………………  1

B.    The Standard For Approving A Proposed Class Action Settlement ……….  2

I.    ARGUMENT ……………………………………………………………  4

    A. Class Certification, and the Resulting Release Of Claims,
       May Not Be Appropriate …………………………………………………  4
    B. The Notice is Insufficient ………………………………………………  6
    C. The Objection Procedures Are Contradictory …………………………  7
    D. The Consideration Offered To The Class Is Illusory As
       The Funds Will Revert to Capital One …………………………………  8
    E. The *Cy Pres* Provisions Unfairly Favor Third Parties And
       The *Cy Pres* Beneficiaries Are Not Aligned With The
       Interests Of The Lawsuit ………………………………………………  10
    F. The Class Representative Payments Are Too High ……………………  12
    G. The Fee Request Is Unreasonable ……………………………………  14

II.    JOINDER IN OTHER OBJECTIONS ………………………………………  17

III.    CONCLUSIONS …………………………………………………………  17

i

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor*
521 U.S. 591, 616 (1997) ……………………………………………   4, 6

*Besinga v. United States*
923 F.2d 133, 136-37 (9th Cir. 1991) ……………………………….   16

*Best W. Int'l, Inc. v. Mahroom*
2007 WL 1302749, at *2, n.1 (D. Ariz. May 3, 2007) …………………….   14

*Broussard v. Meineke Disc. Muffler Shops*
155 F.3d 331, 338 (4th Cir. 1998) ……………………………………   13

*Dennis v. Kellogg Co.*
697 F.3d 858, 865(9th Cir. 2012) ………………………………… 10, 11

*Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corporation*
823 F.2d 20, 23 (2d Cir. 1987) ………………………………….   2, 3

*Hanlon v. Chrysler Corp.*
150 F.3d 1011, 1026 (9th Cir.1998) …………………………….   2, 3, 6

*Hecht v. United Collection Bureau*
691 F.3d 218 (2d. Cir. 2012) ……………………………………….   16

*Holmes v. Cont'l Can Co.*
706 F.2d 1144, 1148 (11th Cir. 1983) …………………………………..   13

*In re Aqua Dots Prods. Liab. Litig.*
654 F.3d 748 (7th Cir. 2011) ……………………………………….   16

*In re Baby Products Antitrust Litig.*
708 F.3d 163, 178 (3d Cir. 2013) ………………………………….   17

*In re Bluetooth Headset Products Liability Litig.*
654 F.3d 935 (2011) ………………………………………………   16

ii

*In re Dry Max Pampers Litig.*
724 F.3d 713, 721 (6th Cir. 2013) …………………………………………… 13

*In re Warner Communications Sec. Litig.*
798 F.2d 35, 37 (2d Cir.1986) …………………………………………… 3

*Klier v. Elf Atochem N. Am., Inc.*
658 F.3d 468, 475 (5th Cir. 2011) …………………………………………… 10

*Kline v. Coldwell, Banker & Co.*
508 F.2d 226 (9th Cir. 1974) …………………………………………… 5

*Knight v. CashCall, Inc.*
200 Cal.App.4th 1377, 1396 (2011) …………………………………………… 5

*London v. Wal-Mart Stores, Inc.*
340 F.3d 1246, 1254 (11th Cir. 2003) …………………………………………… 13

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*
834 F.2d 677, 681 (7th Cir. 1987) …………………………………………… 3

*Mevorah v. Wells Fargo Home Mortg.*
*(In re Wells Fargo Home Mortg. Overtime Pay Litig.)*
571 F.3d 953, 959 (9th Cir.2009) …………………………………………… 6

*Mirfashi v. Fleet Mortgage Corp.*
356 F.3d 781, 785 (7th Cir. 2004) …………………………………………… 2

*Murray v. GMAC Mortg. Corp.*
434 F.3d 948, 952 (7th Cir. 2006) …………………………………………… 12

*Nachshin v. AOL, LLC*
663 F.3d 1034, 1038 (9th Cir.2011) …………………………………………… 10

*Radcliffe v. Experian Info. Solutions*
715 F.3d 1157, 1161 (9th Cir. 2013) …………………………………………… 12, 13

*Shroder v. Suburban Coastal Corp.*
729 F.2d 1371, 1376 (11th Cir. 1984) …………………………………………… 13

iii

*Silber v. Mahon*
957 F.2d 697, 701 (9th Cir. 1992) …………………………………………… 3

*Six Mexican Workers v. Ariz. Citrus Growers*
904 F.2d 1301, 1308 (9th Cir.1990) …………………………………… 10

*Sonmore v. CheckRite Recovery Servs., Inc.*
206 F.R.D. 257, 265 (D. Minn. 2001) …………………………………… 4

*Staton v. Boeing*
327 F.3d 938 at 977(9th Cir. 2012) …………………………………… 13

*Torres v. Nutrisystem, Inc.*
289 F.R.D. 587, 590 (C.D. Cal. 2013) …………………………………… 5

*Twigg v. Sears, Roebuck & Co.*
153 F.3d 1222, 1226-29 (11th Cir. 1998) ……………………………… 16

*Weinberger v. Kendrick*
698 F.2d 61, 73 (2d Cir. 1982) …………………………………………… 3

## STATUTES AND OTHER AUTHORITY

Federal Rules of Civil Procedure:
      23(a)(2)    …………………………………………………… 5
      23(a)(3)    …………………………………………………… 5
      23(a)(4)    …………………………………………………… 12
      23(b)(3)    …………………………………………………… 4-6
      23(b)(3)(A) …………………………………………………… 4
      23(e)       …………………………………………………… 2, 3, 16
      23(e)(1)    …………………………………………………… 3
      23(e)(2)    …………………………………………………… 2

California Penal Code §§
      630         …………………………………………………… 4, 11
      630, et seq. ………………………………………………… 1, 4, 7
      631         …………………………………………………… 4
      632         …………………………………………………… 4, 5
      632.7       …………………………………………………… 4
      637.2(a)    …………………………………………………… 4, 7

ALI Principles §3.07(a)   …………………………………………………………   10

v

## A. Summary of the Litigation and Settlement

This Settlement purports to resolve claims related to telephone calls made by representatives of Capital One regarding credit card accounts that were recorded or monitored without providing verbal notice, in violation of California's Invasion of Privacy Act (Cal. Penal Code §§ 630, et seq.).  The case is a consolidated class action; Class Representatives Stanley Nader and Jarret Olson, each of whom sued separately, represent the interests of the Class.  A separate lawsuit filed in Florida – *Benkert v. Capital One Bank (USA), N.A.* – is also being resolved in this case.  The Settlement also purports to resolve claims under certain other states' invasion of privacy laws.  The class is defined to include "All persons in California, Florida, Maryland, Nevada, and New Hampshire (the states with similar privacy laws) who received one or more telephone calls from and spoke with a representative of Capital One Bank (U.S.A.), N.A. between July 13, 2006 and March 31, 2012, and were not provided with notice that the call may be recorded or monitored."

The Settlement provides that Capital One will advance three million dollars ($3,000,000) towards creation of a common fund for the benefit of the class.  Out of the $3,000,000, a variety of expense items will be paid, including (1) $25,000 to each of the two Class Representatives and the plaintiff in the Florida lawsuit, (2) attorneys fees and costs of $750,000.00 plus costs $16,189.34 in litigation costs,, approximately 27% of the common fund, (3) the attorneys' costs and settlement administration expenses, including notice costs estimated to be $323,000.

Class members who submit valid and timely Claim Forms will receive a pro-rata distribution of the funds remaining after payment of the above expense items.  Class members will only receive cash if they have no balance or amount owed on their Capital One credit cards, otherwise the class benefit will go towards payment of amounts owed to Capital One.  Capital One will have sole discretion to determine whether and by how

1

much the class member is indebted to it.

**B.  <u>The Standard For Approving A Proposed Class Action Settlement</u>**

In reviewing a proposed settlement, the district court has a duty to ensure that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2)  Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions". . . . and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corporation,* 823 F.2d 20, 23 (2d Cir. 1987).   "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole."  *Mirfashi v. Fleet Mortgage Corp*., 356 F.3d 781, 785 (7th Cir. 2004).

Recent Ninth Circuit case law has established certain additional guidelines for considering the fairness of class action settlements.  In *In re Bluetooth Headset Products Liability Litig*., 654 F.3d 935 (2011), the court noted that "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement.  Such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  *Id*., at 946, *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998), et al.  The court observed, "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *Id*.  (citations omitted)  The court noted that the

2

following may be signs of such impropriety:   (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *Id*., at 947.

Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. *Hanlon*, 150 F.3d at 1026; *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) (Posner, J.) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) Friendly, J.) (reviewing courts must employ "even more than the usual care").

The court must be particularly protective of unnamed Class Members.  "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the Class Members' interests were represented adequately.'" *Grant, citing In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir.1986).  *See also Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent Class Members.")

Courts may refuse to approve a settlement if insufficient notice is provided to Class Members to protect their due process rights. Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all Class Members who would be bound by the proposal."

3

I.      **ARGUMENT**

   A. **Class Certification, and the Resulting Release Of Claims, May Not Be Appropriate**

California's Invasion of Privacy Act, Penal Code § 630, et seq. was enacted in 1967 to "protect[ing] the right of privacy of the people of this state."  Penal Code § 630. The California Legislature declared that with new devices and technology used "for the purposes of eavesdropping upon private communications," the resulting invasion of privacy from the "use of such devices and techniques has created a serious threat to the free exercise of personal liabilities and cannot be tolerated in a free and civilized society."  *Id*.  Various sections of CIPA make it illegal to wiretap (§631), to eavesdrop (monitor) and record telephonic communications (§632) or to record cell phone communications without consent (§632.7).  Violations of this statute carry significant damages.  CIPA violations establish statutory damages of $5,000 per violation or three times actual damages per violation.  Penal Code § 637.2(a).

A prerequisite for class certification is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In this case, class certification may not be in the best interests of the class because of the nature of violations and the size of potential statutory damages.  In considering whether class action treatment is appropriate, the interests of the class should be paramount.  Rule 23(b)(3)(A) invites a court to consider "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Fed.R.Civ.P. 23(b)(3)(A). In setting out the Rule 23(b)(3) factors, it was "anticipated that in each case, courts would 'consider the interests of individual members of the class in controlling their own litigations.'"  *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 616 (1997).  *Accord. Sonmore v. CheckRite Recovery Servs., Inc.,* 206 F.R.D. 257, 265 (D. Minn. 2001).

The Ninth Circuit has held that violations of statutes establishing punitive damages may not be appropriate for class action treatment.  In *Kline v. Coldwell, Banker & Co.,* 508 F.2d 226 (9th Cir. 1974), for example, the court rejected class certification, finding class action treatment was not superior where individual recoveries could have amounted to $1,875 and attorneys' fees and costs were recoverable under the statute.  In this regard, the court's ruling in *Torres v. Nutrisystem, Inc.,* 289 F.R.D. 587, 590 (C.D. Cal. 2013) is relevant.  Torres alleged that Nutrisystem had recorded her and other customers' telephone calls without notice, in violation of CIPA.  The court determined that Torres failed to establish the commonality and typicality prerequisites to class certification required by Rule 23(a)(2) and(3).  The court found there was no commonality because violations of Penal Code § 632, which prohibits non-consensual recording of confidential telephone communications, requires a parties' objectively reasonable expectation that the conversation is not being overheard or recorded.  The court noted:

 "The issue whether there exists a reasonable expectation that no one is secretly listening to a phone conversation is generally a question of fact that may depend on numerous specific factors, such as whether the call was initiated by the consumer or whether a corporate employee telephoned a customer, the length of the customer-business relationship, the customer's prior experiences with business communications, and the nature and timing of any recorded disclosures."

*Torres,* citing *Knight v. CashCall, Inc.,* 200 Cal.App.4th 1377, 1396 (2011).  Because of this, the court said determining whether each class member had an expectation of confidentiality would require a detailed factual inquiry into the circumstances of each call. *Torres,* at 587-592.  The court also found that determining whether class members had consented to the recordings required an additional detailed factual inquiry, again because lack of consent is a required element.  *Id.* at 594.

The court also found that the class did not meet the Rule 23(b)(3) predominance

5

requirements.  The court said, "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* at, 623.  The "main concern in the predominance inquiry ... [is] the balance between individual and common issues."  *Mevorah v. Wells Fargo Home Mortg.* (*In re Wells Fargo Home Mortg. Overtime Pay Litig.*), 571 F.3d 953, 959 (9th Cir.2009).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.  However, the Court, found that the individual inquiries required to resolve the consent and confidentiality issues for each class member were predominant.  Because these individualized issues were central to claims filed under CIPA, class certification was not appropriate. *Id.* 594-5.

The above precedent suggests that consumer privacy violations may not be appropriate for class certification.  When a statutory scheme is established to provide individuals an opportunity to remedy grievances through individual actions, it seems unfair to resolve such claims on a class wide basis.  CIPA is aimed at protecting consumer's privacy rights.  If any rights are private and not appropriate for class treatment, it should surely be privacy rights.

## B. <u>The Notice is Insufficient</u>

The parties should be commended for implementing a notice plan that includes posting of relevant documents on the settlement website, including the attorneys' fee motion and the motion for final approval.  This simple step – of making relevant documents available to class members – is ignored in too many cases.

However Class Counsel have failed to inform Class Members of the value of the claims they are releasing with this settlement.  The Notice informs Class Members that the lawsuit concerned alleged violations of California's Invasion of Privacy Act, Penal

Code § 630, et seq., but it does not inform Class Members that the alleged violations give rise to statutory damages claims of $5,000 per violation or three times actual damages. Penal Code § 637.2(a).  Class members should be informed as to this important fact before being asked to decide whether participating in the Settlement is the best step for them.

In addition, the Notice should provide some indication as to the potential value of participating in the Settlement.  As the Settlement provides for pro rata distribution, Counsel cannot predict the exact amount each Class Member may receive, but based on similar cases they could provide some indication to enable Class Members to decide if it is worth their time to fill out a claim form.  Failure to provide this information renders the Notice inadequate.

In addition, the notice procedures do not make any accommodation made for Spanish speakers.  Although federal procedures do not specifically require translated notices, where a class likely includes many members whose native language is not English, courts may require translation of the Notice.  Spanish translation would have been helpful to many class members.

## C. **The Objection Procedures Are Contradictory**

The procedures for filing an objection appear intentionally designed to trip up objectors and improperly provide Class Counsel with the ability to interfere with the right to object.  The Preliminary Approval Motion and the Class Notice specify that objectors should serve their objections on Class Counsel, and that Class Counsel will then file them with the court.  Objecting is a right under federal law and inconvenience to the court or clerk's office cannot impede that right.  Objectors are entitled to file their objection with the court issuing the invitation to object.  Moreover, the procedures outlined in the Class Notice conflict with those found in the Settlement Agreement.  The Settlement Agreement states:

7

Written objections and/or notices of intention to appear must be filed with the Court, and served upon Class Counsel and Defense Counsel at the addresses set forth below, and must also be served on the Settlement Administrator.

Settlement Agreement, Section 10.1, Doc. 119, page 31.

We acknowledge the court's concern, stated at Dkt. No. 126, that "Non−parties cannot file objections electronically and requiring Court staff to handle pro se filings potentially containing personal identifiers is not a good use of the Court's scarce resources." We interpret the court's ruling as being aimed at pro se objectors who are not able to file electronically and not objectors who are represented by counsel and able to file via the court's ECF system.

## D. The Consideration Offered To The Class Is Illusory As The Funds Will Revert to Capital One

Rather than paying the full amount of the pro rata distribution of the Settlement Fund directly to all Class Members, the Settlement provides that Capital One may apply the funds to Class Members' credit card balance, if they still have a Capital One card, or for former cardholders, to outstanding amounts owed to Capital One. Class members who, according to Capital One's records, owe money to Capital One, will thus have their payment paid directly to Capital One, regardless of whether they agree that they owe Capital One anything. Section 3.6 of the Settlement Agreement provides: "This distribution shall be made, at CAPITAL ONE's sole and absolute discretion: (1) as payment of the debt owed to CAPITAL ONE by the Authorized Claimant."

This is not appropriate without the cardholder's consent. The debt may be disputed in some way, and giving Capital One discretion is inappropriate.

This essentially amounts to pre-judgment attachment of the settlement consideration. Class Counsel are not aware of the facts that may underlie various so-called outstanding debts class members may owe to Capital One, and the court should not

8

approve a class action settlement that will "resolve" class members' outstanding "debts" in this way.  Neither the court nor Class Counsel have sufficient information to determine the fairness of resolving each Class Members claims in this way.

Moreover, if the Settlement Fund is just a vehicle for Capital One to reduce its outstanding accounts receivables, the amounts credited directly to their accounts cannot be considered a class member benefit.  That portion of the Settlement that goes to extinguish pre-existing debt, for the benefit of Capital One, is a benefit for Capital One. This feature turns what Class Counsel claim is a non-reversionary settlement into, in fact, a reversionary settlement.

The automatic payment of debt becomes even more troubling upon consideration of the high levels of consumer debt in the United States.  Given the high level of indebtedness of most U.S. credit card holders, very few class members will actually receive cash.

On average, each household in the United States with a credit card carries more than $15,000 in credit card debt, and total U.S. consumer debt is at $11.4 trillion. Statistics provided by Debt.Org, a non-profit debt assistance organization, available at http://www.debt.org/faqs/americans-in-debt/.  Much of this credit card debt also is actually due to the high interest rates charged by credit card companies.

Finally, unfortunately, many class members may end up filing for bankruptcy or otherwise restructuring their debt.  This settlement in effect creates a preference for Capital One to be paid before other creditors.

The consideration involved in this settlement cannot be looked at as simply a cash settlement.  It is in fact more closely analogous to a coupon settlement, that for many class members will provide a discount off the high interest Capital One is charging them on their accounts, but will not actually put any cash in their hands.

### E. **The *Cy Pres* Provisions Unfairly Favor Third Parties And The *Cy Pres* Beneficiaries Are Not Aligned With The Interests Of The Lawsuit**

The Settlement provides that funds from any check that remains uncashed more than 180 days after distribution will become part of a *cy pres* fund, to be distributed in equal amounts to (1) the Berkman Center for Internet & Society at Harvard University, and (2) the Electronic Frontier Foundation.  First, this is improper because that money could go to class members. Instead of benefiting the class, *cy pres* distributions benefit third parties, and should only be used as a last resort when further distribution to class members is not possible.  See ALI Principles §3.07(a) and *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011), ("[The *cy pres* option arises only if it is not possible to put those funds to their very best use: benefitting the class members directly.").  Rather than distributing the money from uncashed checks, the administrator could easily arrange for a second distribution to class members.  In this case, much of the contemplated distribution will not even require checks because it will be applied to class members' credit card balances, so it would be very easy for the class administrator to arrange a second distribution.

Should a *cy pres* distribution be necessary for some component of the Settlement Fund, the *cy pres* beneficiaries selected by the parties are not appropriate.  The Ninth Circuit requires that there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis v. Kellogg Co.,* 697 F.3d 858, 865(9th Cir. 2012), *citing, Nachshin v. AOL, LLC,* 663 F.3d 1034, 1038 (9th Cir.2011).  "A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Id., citing Nachshin* at 1039, and must not benefit a group "too remote from the plaintiff class," *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1308 (9th Cir.1990).

Berkman Center at Harvard University is not focused on protecting consumers'

10

right to privacy.  According to the Center's website, "The Berkman Center's mission is to explore and understand cyberspace; to study its development, dynamics, norms, and standards; and to assess the need or lack thereof for laws and sanctions."  Interesting, but not aligned with the goals of California's Invasion of Privacy Act or the lawsuit.

Electronic Frontier Foundation (EFF) likewise lacks the essential nexus with the aims of the lawsuit or Penal Code § 630.  Neither of these organizations are aimed at protecting class member's right to privacy, or their rights to be free from invasions of their privacy in connection with debt collection efforts.  Wikipedia describes EFF's purpose as follows:

The Electronic Frontier Foundation (EFF) is an international non-profit digital rights group based in the United States.  EFF provides funds for legal defense in court, presents *amici curiae* briefs, defends individuals and new technologies from what it considers baseless or misdirected legal threats, works to expose government malfeasance, provides guidance to the government and courts, organizes political action and mass mailings, supports some new technologies which it believes preserve personal freedoms, maintains a database and web sites of related news and information, monitors and challenges potential legislation that it believes would infringe on personal liberties and fair use, and solicits a list of what it considers patent abuses with intentions to defeat those that it considers without merit.

Based on this summary, EFF appears to be focused on preventing government involvement in certain new technologies and protection of intellectual property – but is not focused on consumer protection at all any more than the Berkman Center.  Neither are focused on consumers' right to privacy or any of the underlying objectives of California's Invasion of Privacy Act, Penal Code § 630.  These *cy pres* beneficiaries are not appropriate for this litigation:  they lack the "driving nexus between the plaintiff class and the *cy pres* beneficiaries" required by *Dennis, supra*.

11

### F.  __The Class Representative Payments Are Too High__

The parties have proposed incentive awards of $25,000 each for each of the two Class Representatives and the plaintiff in the Florida Action, for a total of $75,000.

The parties have proposed incentive awards of $25,000 each be paid to each of the two Class Representatives and the plaintiff in the Florida Action, for a total of $75,000. This unfairly favors class representatives over absent class members.

These outsize awards suggest the representatives are unable to "fairly and adequately protect the interests of the class" as required by Rule 23(a)(4).  *See Radcliffe v. Experian Info. Solutions,* 715 F.3d 1157, 1161 (9th Cir. 2013) (holding that the "incentive awards significantly exceeded in amount what absent class members could expect upon settlement approval" and thus "created a patent divergence of interests between the named representatives and the class"); *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 952 (7th Cir. 2006) ($3000 to named plaintiff and minimal cash to absent class members is "untenable.").

In *Radcliffe* the Ninth Circuit held that incentive awards conditioned upon endorsement of the settlement proposed were impermissible. The court found "the significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest caused by the conditional incentive awards." *Radcliffe*, 715 F.3d at 1165.  The court was concerned that outsize incentive awards undermined the class representatives ability to assess the fairness of the Settlement.   "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards." Id.  In this case the disparity between likely recovery, and the $25,000 offered to class representatives is even more dramatic. In such a situation, the court should consider whether the named representatives will be "more concerned with maximizing [their own gain] than with judging the adequacy of the

12

settlement as it applies to class members at large." *Id*. (*quoting Staton*, 327 F.3d at 977).

Other Circuits have agreed with this approach.   The Eleventh Circuit, for example, found that "where representative[s] obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class." *Holmes v. Cont'l Can Co*., 706 F.2d 1144, 1148 (11th Cir. 1983);

The excessive class representative payment is important because the fairness and objectivity of the class representative is absolutely essential to the fairness of class action litigation.  "T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013).  The promise of an excessive class representative payment causes the interests of the class representative to diverge from those of the class.  In Pampers, the court said generally courts "should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *Id*.

These cases underscore the foundational requirements of class action litigation: "[t]he premise of a class action is litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). Class representatives are inadequate when incentives indicate that they may be acting as agents of counsel (or themselves) and not of the unnamed class. *See, e.g., London v. Wal-Mart Stores, Inc*., 340 F.3d 1246, 1254 (11th Cir. 2003) (friend and business associate of class counsel not adequate representative); *Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1376 (11th Cir. 1984) (employee of class counsel's law firm not adequate representative). Promised motions for unopposed

incentive awards are just another instantiation of this principle. They ensure fidelity to class counsel's desired settlement and undercut any incentive to actually scrutinize the benefits that may be made available to the absent class members.

### G. **The Fee Request Is Unreasonable**

Class Counsel are to be commended for providing detailed lodestar information, including a 191 page record of daily billing by each of the attorneys' seeking compensation under this Settlement, and a summary by category of billed amounts. See Kiesel Declaration, Doc. 146, Exhibits 4 and 5. In addition, this is the rare settlement where Class Counsel have not negotiated a clear sailing agreement, i.e., that Defendants will not challenge the fee request, as a key term of the Settlement. As attorneys' fees not awarded by the court do not revert back to the Defendant, however, Defendants have little incentive to challenge the fee motion, and indeed they have not done so, as their goal is approval of the Settlement and they are essentially indifferent as to its division between Class Members and Class Counsel.

Despite Class Counsel's assertions that they have attempted to avoid duplicative work, the number of lawsuits consolidated here, and the large number of attorneys involved in prosecution of this lawsuit, raise concerns regarding duplicative billing. Here, five separate lawsuits were filed. This is not unusual in large class actions. Typically when unlawful conduct is revealed, plaintiffs' attorneys race to the courthouse to avoid losing their lawsuit to the "first-to-file" rule. In the typical scenario, the first-to-file rule serves as a deterrent for plaintiff's attorneys from initiating lawsuits that are "substantially similar" to one that is already in litigation. *See Best W. Int'l, Inc. v. Mahroom*, 2007 WL 1302749, at *2, n.1 (D. Ariz. May 3, 2007) (finding, in the context of the first to file rule, lawsuits "need only be substantially similar and not exactly identical[ ]"). Unfortunately, however, many consolidated lawsuits reflect concerted efforts by Class Counsel to both overwhelm Defendants by having to deal with multiple

14

lawsuits and to rack up fees through duplicative efforts.

A similar situation was addressed in a recent ruling in the case of *Rose v. Bank of America* pending in the Northern District of California.  The court's Order Granting Motion For Final Approval Of Settlement; Granting In Part And Denying In Part Motion For Attorney's Fees And Costs, Case No. 5:11-cv-02390-EJD (Aug. 29, 2014), is attached hereto as Exhibit A.  In that case the court conducted a detailed analysis of the lodestar information provided by class counsel, and the pleadings submitted in related lawsuits, and determined that the attorneys had been pursuing a deliberate policy of filing duplicative lawsuits to intimidate the defendant.  As a result, he determined that hours spent in pursuing two of the lawsuits should not be included in the lodestar.  Based on this, he reduced the lodestar by 560 hours.  In addition, he reduced the hours devoted to settlement negotiations by 400 hours, arguing that multiple attorneys did not need to attend all sessions of mediation and settlement negotiations, and that the result was excessive billing.

As in Rose, it appears multiple attorneys continued to be involved in this lawsuit–long after the need for their services in order to obtain fees.  This resulted in unnecessary duplication of effort.  For example, nine attorneys apparently attended the mediation on October 8, 2913, resulting in total billing of $25,893.50.  . This is excessive.  Nine attorneys did not need to attend the entire mediation.  Moreover, Lead Attorney Paul Kiesel's hourly rate of $1,100 hours also appears excessive.  His billing alone on the day of the mediation amounted to $8,800.  (See Doc. 146, page 272)  In addition, the $299,975.50 spent on written motions and dispositive motions (categories L240 and L250), no doubt reflects the large number of attorneys reviewing drafts of documents.  Doc. 146, page 320 (erroneously labeled 319). Duplicative work needs to be reduced to reflect the actual benefit to the Class.

The costs of notice and settlement administration also need to be excluded in

determining the attorneys' fees.  Class notice expenses are estimate to be approximately $323,000; this expense is not a benefit for the class and should not be included in calculating the attorneys' fees. Notice is a social cost, not a benefit. In *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), the Seventh Circuit recognized that notice and attorneys' fees are among the "transactions costs" that can cause a class action to be inferior to other methods of adjudication. 654 F.3d at 751.  The amount of the class benefit in this case is the amount of the cash that goes to class members – all other amounts should be excluded in calculating the attorneys' fees.

Indeed, the defendant has every incentive to fund notice because constitutionally adequate notice is a prerequisite for the defendant to obtain the only consideration it receives from a settlement: the waiver and release of class members' claims. *See e.g., Hecht v. United Collection Bureau*, 691 F.3d 218 (2d. Cir. 2012) (permitting relitigation of class action because of inadequacy of class notice in previous settlement); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226-29 (11th Cir. 1998) (same); *Besinga v. United States*, 923 F.2d 133, 136-37 (9th Cir. 1991) (same) (citing cases). The fact that notice costs are not a class benefit is just one example of the principle that costs imposed on the defendant are not the per se measure of class value. The standard under Rule 23(e) "is not how much money a company spends on purported benefits, but the value of those benefits to the class." *Bluetooth*, 654 F.3d at 944 (9th Cir. 2011) (internal quotation and citation omitted).

Treating notice expenses as a class benefit perverts incentives: in so doing class counsel effectively receive a commission on money paid to third parties. If attorneys' fees are paid only on what the class receives, class counsel are incentivized to ensure that settlement administration is efficient and to take steps to prevent overbilling or wasteful expenditures. But if administrative expenses are deemed a class benefit, then counsel should be financially indifferent between claims paid to class members and notice costs

16

paid to settlement administrators. The class, needless to say, is not "indifferent to whether funds are distributed to them or to [third parties], and class counsel should not be either." *In re Baby Products Antitrust Litig.,* 708 F.3d 163, 178 (3d Cir. 2013).  While *Baby Products* addressed *cy pres*, its principle applies to notice and settlement administration expenses as well.

For these reasons, this Court should inquire into the actual benefit derived by the Class, and should base attorneys' fees exclusively on that benefit.  Counsel's assertion that they are seeking only 25% of the common fund is inaccurate.  Given the as yet undetermined settlement and administration costs, as well as the high class notice costs, the real percentage they are seeking is far higher.

## II.   JOINDER IN OTHER OBJECTIONS

This objector joins in all other well-founded and meritorious objections.

## III.   CONCLUSIONS

For the foregoing reasons and all others to be presented at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dated:   September 12, 2014          By: /s/ Joseph Darrell Palmer
                                                Joseph Darrell Palmer

                                         Attorney for Objector Michelle Melton

17

1
2

## <u>CERTIFICATE OF SERVICE</u>

3
4
5

     I hereby certify that on September 12, 2014, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Central District of California by using the USDC CM/ECF system.

6
7
8

     Service on participants in the case who are registered CM/ECF users will be accomplished by the USDC CM/ECF system.

9
10
11

     I further certify that the foregoing was served on the Settlement Administrator via electronic mail and U.S. Mail, postage prepaid, on this date, as follows:

12
13
14
15

Nader v. Capital One Bank (USA)
N.A. Settlement Administrator
P.O. Box 25219
Richmond, VA 23260
Email: SettlementAdministrator@TelephoneRecordingSettlement.com

16
17

         /s/ Joseph Darrell Palmer_____
         Joseph Darrell Palmer

18
19
20
21
22
23
24
25
26
27
28

18

CASE NO. 12-CV-01265-DSF
OBJECTION OF MICHELLE MELTON TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR