# EXHIBIT A

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE ROSE, on behalf of herself and all others similarly situated, | ) Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD |
| Plaintiffs, | ) |
| v. | ) **ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS** |
| BANK OF AMERICA CORPORATION, and FIA CARD SERVICES, N.A., | ) |
| Defendants. | ) |
| CAROL DUKE AND JACK POSTER, on behalf of themselves and all others similarly situated, | ) |
| Plaintiffs, | ) |
| v. | ) |
| BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; AND FIA CARD SERVICES, N.A., | ) |
| Defendants. | ) |

1

Stephanie Rose, Sandra Ramirez, Shannon Johnson, Amin Makin, Carol Duke, Jack Poster, and Freddericka Bradshaw ("Plaintiffs") move for final approval of the parties' proposed Settlement Agreement and for attorney's fees and costs. Bank of America Corporation, Bank of America, N.A., and FIA Card Services, N.A. (collectively, "Defendants") do not object to the motions in the context of the parties' proposed settlement.

The final approval hearing was held on April 4, 2014. For the reasons explained below, the motion for final approval is GRANTED. The motion for attorney's fees and costs is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

The proposed Settlement Agreement would resolve all claims in the above-entitled actions as well as claims in the following actions: <u>Ramirez v. Bank of Am., N.A.</u>, Case No. 14-CV-02175-EJD (N.D. Cal.); <u>Johnson v. Bank of Am. Corporation</u>, Case No. 14-CV-02177-EJD (N.D. Cal.); <u>Makin v. Bank of Am., N.A.</u>, Case No. 14-CV-02176-EJD (N.D. Cal.); and <u>Bradshaw v. Bank of Am. Corp</u>, 13-CV-0431 LAB (JLB) (S.D. Cal.).

Plaintiffs brought these actions alleging that Bank of America engaged in a systematic practice of calling or texting consumers' cell phones through the use of automatic telephone dialing systems and/or an artificial or prerecorded voice without their prior express consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A). Bank of America denies all of Plaintiffs' allegations and argues that it had prior express consent to make automated, prerecorded calls to Plaintiffs and Class Members on their cell phones. The TCPA permits claimants to recover statutory damages in the amount of $500 per violation of the Act, and up to $1,500 per willful violation. 47 U.S.C. § 227(b). In addition, the TCPA permits claimants to seek injunctive relief to prevent future violations.

The parties conducted discovery and reached a tentative settlement after mediation. On December 6, 2013, the Court granted preliminary approval of the Settlement Agreement, conditionally certified the proposed Settlement Class, designated class representatives, appointed class counsel, approved the settlement administration plan, and approved a plan for giving notice to

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

Class Members. The Court also set deadlines for objecting to the Settlement Agreement and for requesting exclusion from the settlement class.

The final approval hearing was held on April 4, 2014.

**II. Motion for Final Approval of Settlement**

    **a. Final certification of settlement class**

        **i. Class definition and notice to the class**

The parties agreed to certification of a Settlement Class defined as all persons in the United States who:

> (1) received one or more non-emergency, default servicing telephone calls from Bank of America regarding a Bank of America Residential Mortgage Loan Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between August 30, 2007 and January 31, 2013 (Mortgage Calls);
> or
> (2) received one or more non-emergency, default servicing telephone calls from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between May 16, 2007, and January 31, 2013 (Credit Card Calls);
> or
> (3) received one or more non-emergency, default servicing text messages from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between February 22, 2009, and December 31, 2010 (Credit Card Texts). This excludes those identified individuals who are included in paragraph (2) above.

The Court granted preliminary approval to the parties' proposed notice procedure. The Court is now satisfied that the notice procedure was carried out according to the applicable standards and that it has satisfied the requirements of the federal Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, and Fed. R. Civ. P. 23.

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

**United States District Court**
For the Northern District of California

### 1. Notice under the Class Action Fairness Act

The Class Action Fairness Act ("CAFA") requires defendants to send to the appropriate state and federal officials a copy of the complaint, notice of scheduled judicial hearings, proposed or final notifications to class members, proposed or final class settlements, any other contemporaneous agreements between the parties, any final judgments or notice of dismissal, and the names of class members if feasible. See 28 U.S.C. § 1715(b)(1–8). The Court is satisfied that the notices were sent. See Docket No. 72.

### 2. Notice under Rule 23

The notice program satisfied both Fed. R. Civ. P. Rule 23(c)(2)(B) (requiring that the court provide "the best notice that is practicable under the circumstances") and 23(e)(1) (requiring court to "direct notice in a reasonable manner to all class members who would be bound by [settlement]"). In class action settlements, it is common practice to provide a single notice program that satisfies both of these notice standards. See David F. Herr, Annotated Manual for Complex Litigation § 21.31 (4th ed. 2005).

In this case, postal mail was well suited for locating and notifying class members, since the violations by defendant arose out of auto-dialed telephone calls and text messages made to cellular telephones, which typically have a name and physical mailing address associated with them.

The Court reviewed and approved these notices before they were disseminated and found that they were written in plain language. The notice clearly stated the nature of the action; the class definition; the class claims, issues, and defenses; that class members could appear through counsel; when and how class members could elect to be excluded; and the binding effect of a class judgment on class members. See Fed. R. Civ. P. 23(c)(2)(B). It also informed class members of the amount of attorneys' fees requested by Class Counsel. Fed. R. Civ. P. 23(h)(1).

During the preliminary approval hearing, the Court requested the parties insert language in the settlement notice documents to notify class members that they may be entitled to statutory damages of $500 to $1500 per violation. The Court also asked the parties to improve accessibility

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   to information regarding the Settlement Agreement for Spanish language-only Class Members.

2   The parties complied with both requests.

3          The Court finds that the notice was reasonably calculated under the circumstances to

4   apprise the Settlement Class of the pendency of this action, all material elements of the Settlement,

5   the opportunity for Settlement Class Members to exclude themselves from, object to, or comment

6   on the settlement and to appear at the final approval hearing.  The notice was the best notice

7   practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided

8   notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and

9   sufficient notice to all Class Members; and, complied fully with the laws of the United States and

10  of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.

11          **ii.  Scope of release**

12          The parties have agreed that upon entry of final approval of the Settlement Agreement, the

13  Class Members who did not opt out will provide a release tailored to the practices at issue in this

14  case.  Specifically, they will release all claims "that arise out of or relate" to the "use of an

15  'automatic telephone dialing system' or 'artificial or prerecorded voice' to contact or attempt to

16  contact Settlement Class Members."

17          **iii.  Final certification**

18          The parties jointly moved the Court to resolve this case as a Settlement Class. In order to

19  certify a Settlement Class, the requirements of Rule 23 must generally be satisfied and each are

20  considered here.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (citing

21  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997)).  In assessing Rule 23 requirements in

22  the settlement context, a court may consider that there will be no trial.  See Amchem, 521 U.S. at

23  620 ("court need not inquire whether the case, if tried, would present intractable management

24  problems . . . for the proposal is that there be no trial.").

25          For certification of a settlement class, Rule 23(a) requires: (1) numerosity, (2)

26  commonality, (3) typicality, and (4) adequacy of representation.  Under Rule 23(b)(3) a class

27  action must meet two additional requirements: (1) common questions must "predominate over any

28

                                          5

Case 5:11-cv-02390-EJD  Document 166-1  Filed 08/29/14  Page 7 of 23

1    questions affecting only individual members;" and (2) class resolution must be "superior to other

2    available methods of fair and efficient adjudication of the controversy."

3          In granting preliminary approval of the Settlement Agreement, the Court held that the

4    requirements of Rule 23(a) and Rule 23(b)(3) were satisfied.  Having fully reviewed the record, the

5    Court finds that the Settlement Agreement continues to satisfy Rule 23(a) and Rule 23(b)(3).

6                    **b.  Final Approval of the Settlement Agreement**

7                           **i.   Applicable legal standards**

8          This court may approve the class action settlement after hearing and upon a finding that the

9    settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).  Therefore, the question

10   is "not whether the final product could be prettier, smarter, or snazzier, but whether it is fair,

11   adequate, and free from collusion." Hanlon, 150 F.3d at 1027.  Further, it is "the settlement taken

12   as a whole, rather than the individual component parts, that must be examined for overall fairness."

13   Id. at 1026.

14         A settlement under Rule 23(e) requires that the Court balance a number of factors,

15   including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely

16   duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the

17   amount offered in settlement; (5) the extent of discovery completed; (6) the experience and views

18   of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

19   members to the proposed settlement. Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th

20   Cir. 2004).

21         Prior to formal class certification, there is an even greater potential for a breach of fiduciary

22   duty owed the class during settlement.  Accordingly, such agreements must withstand an even

23   higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily

24   required under Rule 23(e) before securing the court's approval as fair. Hanlon, 150 F.3d at 1026;

25   Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago, 834 F.2d 677, 681 (7th

26   Cir. 1987) (Posner, J.) ("[W]hen class certification is deferred, a more careful scrutiny of the

27   fairness of the settlement is required."); Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)

28

**United States District Court**
For the Northern District of California

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN
PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

United States District Court
For the Northern District of California

(Friendly, J.) (reviewing courts must employ "even more than the usual care"); <u>see also</u> Manual for Complex Litig. § 21.612 (4th ed. 2004).

Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations. <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 960 (9th Cir. 2003). A few such signs are:

(1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," <u>Hanlon</u>, 150 F.3d at 1021; <u>see</u> <u>Murray v. GMAC Mortg. Corp.</u>, 434 F.3d 948, 952 (7th Cir. 2006); <u>Crawford v. Equifax Payment Servs., Inc.</u>, 201 F.3d 877, 882 (7th Cir. 2000);

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class," <u>Lobatz v. U.S. W. Cellular of California, Inc.</u>, 222 F.3d 1142, 1148 (9th Cir. 2000); <u>see</u> <u>Weinberger v. Great N. Nekoosa Corp.</u>, 925 F.2d 518, 524 (1st Cir. 1991) ("[L]awyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees."); and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund, <u>see</u> <u>Mirfasihi v. Fleet Mortg. Corp.</u>, 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.).

### ii. The strength of the Plaintiff's case and the risk, expense, complexity, and likely duration of further litigation

Plaintiffs argue that they believe they have a strong case, but that the case raised several novel legal issues that favor approving a settlement. In particular, the parties have competing interpretations of what constitutes "prior express consent" under the TCPA based on the FCC's January 4, 2008 declaratory ruling, <u>In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 23 F.C.C.R. 559.

Having reviewed the parties' statements regarding their dispute and the relevant authorities, the Court finds that both parties have legitimate and material positions. Furthermore, even if Plaintiffs prevailed at trial, the sheer size of the award against Defendants, who could be liable for $500 or $1,500 per violation for potentially millions of violations, would likely raise significant post-trial concerns. Such an award would almost certainly be appealed, potentially reversed, and litigation would not be resolved for a significant amount of time.

In light of these considerations, the Court finds that factors 1 and 2 weigh in favor of granting final approval.

### iii.   The risk of maintaining class action status throughout trial

As the parties point out, "[c]ourts have split on class certification in TCPA cases, increasing the risk of maintaining the class action through trial." Arthur v. Sallie Mae, Inc., 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012). This factor weighs in favor of granting final approval.

### iv.   The amount offered in settlement

The Settlement Agreement requires Defendants to pay over $32 million dollars into a non-reversionary Settlement Fund. The parties have described this recovery as the largest "ever obtained in a TCPA class action." As discussed further below, the Court has determined that the amount of the Settlement Fund, considered in light of the size of the class, is in line with recoveries obtained in similar TCPA class action settlements.

### v.   The extent of discovery completed

A sufficient amount of discovery was completed. Plaintiffs claim that they reviewed thousands of pages of documents, took the depositions of five different 30(b)(6) witnesses, and successfully moved to compel discovery in the Ramirez action. In addition, Bank of America voluntarily provided Class Counsel with, and Class Counsel reviewed, the call record data. The parties participated in three full-day mediations before coming to a tentative agreement. Thus, this factor weighs in favor of approving the Settlement Agreement.

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

### vi.   The experience and views of counsel

Class Counsel are experienced litigators.  Several of the attorneys have participated in a large number of TCPA class action settlements.  This factor weighs in favor of approval.

### vii.   The presence of a governmental participant

Although CAFA notice was sent to various governmental entities, none sought to participate in the settlement proceedings by objection or comment.  Thus, this factor weighs in favor of approval.

### viii.   The reaction of the class members to the proposed settlement

Out of about 7 million individuals in the Class, 227,701 individuals have made claims, 16 have made objections, and 390 opted out.  While low, the participation rate is in line with other settlements of this size.  Having reviewed the objections, the Court finds that no Class Member has stated grounds that would provide a substantial reason to deny approval.  Thus, this factor weighs in favor of approval.

### ix.   The absence of collusion in the settlement procedure

The Settlement Agreement is the result of negotiations between the parties as well as three full-day mediations presided over by the Honorable Edward A. Infante, Ret..  The parties represent that negotiations were hard-fought and adversarial, and the parties' positions were only reconciled by Judge Infante's proposal.  Judge Infante's declaration, attached to the Motion for Final Approval, lends support to the parties' representations regarding the settlement procedure.

Furthermore, none of the three "subtle signs" of collusion described in In re Bluetooth are present here: 1) Class counsel are not receiving a disproportionate distribution of the settlement because 25% is the standard allocation (and administration costs are reasonable considering the size of the class), 2) there is no "clear sailing" arrangement because attorney's fees are paid out of the class fund, and 3) the parties did not arrange for fees not awarded to revert back to defendants; rather, fees not awarded will be added to the class fund.[1]

Thus, this factor weighs in favor of approval.

---

[1] Class Counsel represents that the Settlement Agreement is non-reversionary.  A review of the Settlement Agreement confirms this; specifically, Sections 2.34 and 4.04.

9

**III.** **Motion for attorney's fees and costs and for service awards to the class representatives**

    **a.** **Applicable legal standards**

      While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount. See Staton, 327 F.3d at 963–64; Knisley v. Network Assoc., 312 F.3d 1123, 1125 (9th Cir. 2002); Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1328–29 & n. 20 (9th Cir. 1999). The reasonableness of any fee award must be considered against the backdrop of the "American Rule," which provides that courts generally are without discretion to award attorneys' fees to a prevailing plaintiff unless (1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) "the successful litigants have created a common fund for recovery or extended a substantial benefit to a class." Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 275 (1975) (Brennan, J., dissenting); accord Zambrano v. City of Tustin, 885 F.2d 1473, 1481 & n. 25 (9th Cir. 1989).

      The award of attorneys' fees in a class action settlement is often justified by the common fund or statutory fee-shifting exceptions to the American Rule, and sometimes by both. See Staton, 327 F.3d at 972; see also Court Awarded Attorney Fees, Third Circuit Task Force, 108 F.R.D. 237, 250 (1985) (purpose of common-fund exception is to "avoid the unjust enrichment of those who benefit from the fund that is created, protected, or increased by the litigation and who otherwise would bear none of the litigation costs"). The Ninth Circuit has approved two different methods for calculating a reasonable attorneys' fee depending on the circumstances.

      The "lodestar method" is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation. See Hanlon, 150 F.3d at 1029; In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 821 (3d Cir. 1995).

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN
PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer. Staton, 327 F.3d at 965. Though the lodestar figure is "presumptively reasonable," Cunningham v. Cnty. of Los Angeles, 879 F.2d 481, 488 (9th Cir. 1988), the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment," Hanlon, 150 F.3d at 1029 (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)). Foremost among these considerations, however, is the benefit obtained for the class. See Hensley v. Eckerhart, 461 U.S. 424, 434–36 (1983); McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2009) (ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff"). Thus, where the plaintiff has achieved "only limited success," counting all hours expended on the litigation—even those reasonably spent—may produce an "excessive amount," and the Supreme Court has instructed district courts to instead "award only that amount of fees that is reasonable in relation to the results obtained." Hensley, 461 U.S. at 436, 440.

Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. In re Mercury Interactive Corp., 618 F.3d 988, 992 (9th Cir. 2010) (citing Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000)). Because the benefit to the class is easily quantified in common-fund settlements, the Ninth Circuit has allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure. Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990); accord Powers, 229 F.3d at 1256–57; Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).

11

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

United States District Court
For the Northern District of California

Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result.  See In re Coordinated Pretrial Proceedings, 109 F.3d 602, 607 (9th Cir. 1997) (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1294–95 n. 2 (9th Cir. 1994)).  Thus, for example, where awarding 25% of a "megafund" would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead.  Six Mexican Workers, 904 F.2d at 1311; see In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions, 148 F.3d 283, 339 (3d Cir. 1998) (explaining that basis for inverse relationship between size of fund and percentage awarded for fees is that "in many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel" (internal quotation marks omitted)).

### b.  Application

#### i.  Calculation of a reasonable lodestar amount

At the time Class Counsel filed declarations supporting their request for fees, they had calculated their lodestar of approximately $1,396,523.75 from a total of 2,560.7 hours of work. Since the filing of their declarations, Class Counsel have expended an unknown number of hours seeking approval of the Settlement, administering the Settlement, and assisting Class Members. Class Counsel also claim (and the Court accepts) that they will continue to assist Class Members with individual inquiries, oversee the claims resolution process, and will help resolve Class Member challenges to the result of their claims submissions.  Thus, it is likely that the "final" lodestar calculation will be based on more than 2,560.7 hours.

Exhibits 1 through 10 to Docket No. 74 of Rose are declarations submitted by each of the 10 law firms who represent the Class and support Class Counsel's request for fees.

#### 1.  Billing rates

The Court finds that the billing rates for partners, associates, and paralegals are reasonable. Paralegal rates fall between $100 per hour and $305 per hour, which is an ordinary range.

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

United States District Court
For the Northern District of California

Associates billed at the following rates: two associates from Meyer Wilson Co., LPA at $325 per hour, one associate from Terrell Marshall Daudt & Willie PLLC at $525 per hour, and two associates from Lieff Cabraser Heimann & Bernstein, LLP at $435 and $465 per hour.  One attorney, who held the titles of both Law Clerk and Contract Attorney, billed at $325 per hour. Only the $525 per hour rate appears high, but not unusually so, particularly in light of the fact that the associate billing at that rate is a 2004 law school graduate.

Partners[2] billed at rates between $350 per hour and $775 per hour.  The partners' rates generally line up with their experience.  Two of the three highest-billing partners, Jonathan D. Selbin and Douglas J. Campion, represented the Class during the preliminary approval hearing and the final approval hearing, and appeared to have roles of authority amongst Class Counsel.  Mr. Selbin and Mr. Campion, along with the other partners billing above $600 per hour, all have significant experience to justify their high billing rates.

### 2.  Hours spent

Upon review of the billing submissions, the Court finds that Class Counsel included an unreasonable number of hours in their lodestar calculation.

Class Counsel filed separate declarations, one for each law firm, that go into varying amounts of detail as to how time was spent.  For the most part, each law firm divided their hours spent into the categories of: Initial case investigation, motions practice, discovery, settlement negotiations and mediations, drafting settlement and motion for approval papers, and overseeing settlement administration.  Saeed & Little, LLP included an additional category entitled client management.  Every law firm except for Terrell Marshall Daudt & Willie PLLC specified how many hours were spent in each category.  Terrell Marshall Daudt & Willie PLLC specified only the total number of hours spent.

Of the total 2,560.7 hours accrued, 390 hours were spent in initial case investigation, 200 hours were spent in motions practice, 600 hours were spent in discovery, 800 hours were spent in settlement negotiations and mediations, 300 hours were spent in drafting the settlement agreement

---

[2] For purposes of this discussion, the Court defines "Partners" as those attorneys who hold the title of Partner, Of Counsel, Owner, or Manager, or are solo practitioners.

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN
PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

and the motions for approval, 180 hours were spent in settlement administration, and 90 hours were spent in client management (figures are estimated and rounded down).[3]

The 800 hours in settlement negotiations and mediation stands out as particularly excessive. Representative counsel for all firms participated in three full-day mediations before Judge Infante. In the Court's experience, there is little reason why so many attorneys would need to be present during the mediation sessions. Rather, lawyers on the same side often find it more efficient to prepare their negotiating position in advance, then delegate a small number of attorneys to execute. Furthermore, no reasonable client would approve 800 hours of firm time to complete the tasks under this category, especially at these rates. The Court therefore reduces the number of hours billed under this category to 400.

In addition, much of the work done prior to settlement negotiations and mediation was duplicative, despite Class Counsel's claims that they used best efforts to avoid duplicative work. Much of the work done in the initial case investigation, motions practice, and discovery was redundant, made necessary only by the particular litigation strategy Class Counsel chose to pursue.

The Court notes that the instant settlement resolves six separate actions, all seeking to hold Defendants liable for allegedly making automated phone calls in violation of the TCPA. The first case, Rose, was filed on May 16, 2011, by Douglas J. Campion and Anthony J. Trepel. Thereafter, the remaining five cases followed throughout 2011 through 2013. This is typical in class actions involving large, nationwide classes where the defendant's allegedly unlawful conduct occurred over a particular time period, or where the defendant's conduct was revealed by a source such as a news story or an investigative report. In such cases, once the unlawful conduct is uncovered, plaintiff's attorneys essentially race to the courthouse to avoid losing their lawsuit to the "first-to-file" rule.[4]

---

[3] Because Terrell Marshall Daudt & Willie PLLC did not divide their hours by category, the Court took the total reported hours and divided them evenly among each category.

[4] The "first-to-file" rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 95–96 (9th Cir. 1982) (citations omitted).

14

In the typical scenario, the first-to-file rule would serve as a deterrent for plaintiff's attorneys to initiate a lawsuit that is "substantially similar" to one that is already in litigation.  See Best W. Int'l, Inc. v. Mahroom, 2007 WL 1302749, at *2, n.1 (D. Ariz. May 3, 2007) (finding, in the context of the first to file rule, lawsuits "need only be substantially similar and not exactly identical[ ]").  Here, the first case, Rose, focused on FIA Card Services and Bank of America Corporation's practices with regard to credit card customers.  Ramirez, filed on August 31, 2011, focused on any automated calls to Bank of America, N.A.'s customers.[5]  Duke, filed on July 30, 2012, focused on calls to all Defendants' credit card and mortgage customers, as well as all other customers affected by these practices (the instant settlement, of course, resolves only claims regarding mortgage and credit card customers).  Johnson, filed on December 29, 2011, focuses on any automated calls to Bank of America Corporation's customers.[6]  Makin, filed on March 27, 2012, focuses on individuals in Indiana, Illinois, or Wisconsin who received a prerecorded call after the called party had filed a Chapter 13 bankruptcy or otherwise demanded that the calls cease.  Bradshaw, filed on February 22, 2013, focuses on text messages rather than calls to cellular telephones.

Class Counsel should not be compensated for pre-mediation work completed in Duke and Johnson because the cases are "substantially similar" to Rose and Ramirez.  Normally, the Court would expect that Duke and Johnson would never have been filed due to the first-to-file rule.  Or, if the subsequent filers were unaware of Rose and Ramirez, Defendants would have moved (likely successfully) to have Duke and Johnson dismissed.  In fact, Defendants filed a motion to dismiss the Duke action based on the first-to-file rule.  However, the parties stipulated to removing Defendants' motion from the calendar to engage in mediation.

---

[5] Although the moving papers represent that Ramirez focuses on automated calls made to Bank of America, N.A.'s mortgage customers only, a review of the Complaint shows that Ramirez sought to certify a class consisting of credit card customers, consumer and business loan customers, home mortgages, and "all other persons whom Defendant or its affiliates dialed (or mis-dialed).  14-CV-2175-EJD, Docket No. 1.

[6] Although the moving papers represent that Johnson focuses on automated calls made to Bank of America, N.A.'s mortgage customers, a review of the Complaint shows that Johnson was actually filed against Bank of America Corporation, and it sought to certify a class consisting of "all persons within the United States who received any telephone call from Defendant . . ."  14-CV-2177-EJD, Docket No. 1.

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

United States District Court
For the Northern District of California

What is unusual here is that the attorneys who filed <u>Duke</u> and <u>Johnson</u> had previously worked together with the attorneys who filed <u>Rose</u> and <u>Ramirez</u>, in <u>Arthur v. Sallie Mae</u>, 10-CV-198-JLR (W.D. Wash.), another TCPA class action settlement. In other words, the attorneys who filed these four cases were not at arm's length. From the Court's perspective, Class Counsel appear to have coordinated their efforts from very early on in the proceedings, perhaps deliberately selecting a litigation strategy whereby Defendants would be overwhelmed by attacks on several fronts and consequently forced to negotiate from a weaker position. As a result, Class Members are asked to pay the costs of litigating six separate actions with a total of 18 attorneys and 8 paralegals. As explained in the following section, the results achieved in the litigation do not justify such an expense.

Accordingly, the Court reduces the number of hours in the lodestar calculation by the number of hours logged in <u>Duke</u> and <u>Johnson</u> prior to settlement negotiations and mediation: 560 hours. In addition to the 400 hour reduction discussed above, the Court reduces the lodestar by 960 hours. Since the initial calculation of 2,560.7 hours does not include time spent by Class Counsel after the instant motions were filed, the Court adds 100 hours to the final total. Therefore, the lodestar calculation is adjusted to reflect a total of 1,700.7 hours of work, at the prior-calculated blended billing rate of $545.37, resulting in a final lodestar of $927,507.30.

As a sidenote, the Court notes that Class Counsel's choice of involving 10 different law firms in this matter introduced other inefficiencies. Of the 2,560.7 hours reported in the declarations, 1,670.8 hours were billed by attorneys with rates of more than $500 per hour, leaving only 889.9 hours billed by attorneys/paralegals with rates of $500 per hour or less. Few clients would stand for such an inefficient allocation of time. However, the Court believes that its reduction of the hours logged in <u>Duke</u> and <u>Johnson</u> prior to mediation should, at least in part, compensate for this factor. No further reduction is necessary.

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

**ii.   Percentage method**

Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

Class Counsel seek 25% of the Settlement Fund, which amounts to $8,020,976, inclusive of costs expended by Class Counsel of $64,365.14.  Prior to the Court's reduction of the lodestar, the lodestar cross-check using Class Counsel's calculated lodestar would have produced a multiplier of 5.34.  Using the reduced lodestar of $927,507.30, a $8,020,976 award would now result in a multiplier of 8.65.

The Court compared a number of TCPA class action settlements in which attorneys from the instant case participated: in Grannan, 2012 WL 216522, a granted request for 25% of the Settlement Fund reflected a multiplier of 1.47.  In Adams v. AllianceOne, Inc., 08-CV-248-JAH (S.D. Cal. Sept. 28, 2012), a granted request for 30% of the Settlement Fund reflected a multiplier of 3.81.  In Arthur v. Sallie Mae, Inc., 10-CV-198-JLR (W.D. Wash.), a granted request for 20% of the Settlement Fund reflected a multiplier of 2.59.

However, Class Counsel point to several cases in which multipliers higher than 5.34 were approved.  See Vizcaino, 290 F.3d at 1052 appx. (9th Cir. 2002) (collecting cases); see also Steiner v. Am. Broad. Co., Inc., 248 F. App'x 780, 783 (9th Cir. 2007) (approving multiplier of 6.85).

The 25% benchmark rate is a starting point for analysis.  Vizcaino, 290 F.3d at 1048. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case.  Id.  Thus, a high multiplier such as 8.65 might be justified if supported by the circumstances of the case.  Class Counsel have identified the following factors as supporting their request for fees.

**1.   Results achieved**

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case.  See Hensley, 461 U.S. at 435.

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

United States District Court
For the Northern District of California

1    Class Counsel argue that this factor, standing alone, supports their fee request.  The Court

2    disagrees.

3          The Settlement Agreement provides both monetary relief and prospective relief.  Class

4    Counsel estimated, at the time they filed the instant motions, that claimants will receive an average

5    recovery of between $20 to $40.  Of course, it is unlikely that a settlement would result in

6    claimants receiving the full $500 or $1,500 per violation they might be entitled to under the TCPA.

7    Even so, the $20 to $40 range falls in the lower range of recovery achieved in other TCPA class

8    action settlements.  For example, in Grannan, 2012 WL 216522, each class member received

9    between $300 to $325.  In Malta v. Fed. Home Loan Mortg. Corp., 10-CV-1290-BEN (S.D. Cal.),

10   after final approval, each of the 120,547 claimants that made a timely and valid claim as well as the

11   103 claimants that made a late claim received the sum of $84.82.  In Kramer v. B2Mobile, 10-CV-

12   2722-CW (N.D. Cal.), each claimant was to be paid $100, but subject to a pro-rata reduction based

13   on the maximum amount of the fund, and it was unclear from the final approval order how much

14   money each claimant actually received.  The monetary relief in this case, however, lines up with

15   that achieved in Arthur v. Sallie Mae, where each claimant was estimated to receive between $20

16   and $40.

17         Furthermore, the Court questions the "prospective relief" provided by the Settlement

18   Agreement, which is described as such: "The Settlement focuses on prospective practice changes

19   designed to protect Settlement Class Members from receiving automated calls in the future.

20   Specifically, in consideration for the Settlement and in response to the Complaints filed in the

21   Actions, Defendants developed and implemented significant enhancements to its servicing systems

22   that are designed to prevent the calling of a cell phone unless a loan servicing record is

23   systematically coded to reflect the borrower's prior express consent to call his or her cell phone."

24         The Court was concerned that the prospective relief would not be of any benefit to

25   consumers because it would not prevent Defendants from continuing to call Class Members.  The

26   mere fact that Defendants changed their systems to reflect the borrower's prior express consent

27   means very little in the context of this lawsuit.  "Prior express consent" under the TCPA is a term

28

**United States District Court**
For the Northern District of California

18

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN
PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

of art with an unsettled meaning.  In fact, this lawsuit centers around the question of whether Defendants' or Plaintiffs' definition of "prior express consent" should prevail.  Defendants have maintained throughout this action, and the related actions, that they have always had their customers' prior express consent.

Class Counsel were questioned during the final approval hearing as to whether Defendants would change their definition of prior express consent.  Class Counsel confirmed that Defendants would not.  The "prospective relief" touted by the Settlement Agreement merely provides that Defendants will not call anyone unless Defendants had that person's prior express consent.  But because Defendants continue to use the same definition of "prior express consent," it would appear that most, perhaps all, Class Members will continue receiving automated calls.  Because the primary goal of this litigation, as described by Class Counsel, was to put an end to these phone calls, the touted relief falls short and is of particular concern.

The non-monetary relief achieved here is particularly nominal in comparison to non-monetary relief achieved in other TCPA class action settlements.  For example, in Grannan, the defendant agreed to a one-year injunction whereby the defendant would "scrub" their automated dialing lists of cell phone numbers, and agreed not to call those numbers using an automated dialing system.  In Arthur v. Sallie Mae, the defendants agreed not to make calls to the cell phones of class members who submitted forms revoking their consent in conjunction with their claim forms.  In Kramer v. B2Mobile, defendants agreed to a four-year injunction whereby they agreed to keep documented proof of prior express consent received from cell phone owners.  As part of the injunction, defendants agreed that, prospectively, prior express consent would require an affirmative action on the part of the customer such as clicking a box saying "I Accept."  In addition, the claim forms in this settlement contained an option that class members could select in order to remove their cell phone number from defendants' calling lists.  However, the prospective relief achieved in the instant case appears the same as the prospective relief achieved in Malta v. Fed. Home Loan Mortg. Corp.

Because the results achieved here are not "exceptional" in the context of other TCPA class action settlements, and in fact are on the lower end of the scale, this factor does not support the granting of a high multiplier.

### 2. Risk of continuing litigation

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." In re Omnivision Technologies, Inc., 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008); see also Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee).

Class Counsel argues that there was a significant risk because the issue of prior express consent is an open question and that the Court may not have adopted Class Counsel's view. If not, the Court may have denied a motion to certify the class.

The Court agrees that this factor supports the requested fee.

### 3. The skill required

The "prosecution and management of a complex national class action requires unique legal skills and abilities" that are to be considered when evaluating fees. Omnivision, 559 F. Supp. 2d at 1047 (citation omitted).

The Court agrees that this factor supports the requested fee; Class Counsel are experienced TCPA litigators and clearly have a wealth of experience in this area. This factor supports the requested fee.

### 4. Contingency rationale

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all for their work. In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis

ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS

United States District Court
For the Northern District of California

1  regardless whether they win or lose."); Vizcaino, 290 F.3d at 1051 (courts reward successful class

2  counsel in contingency cases "for taking the risk of nonpayment by paying them a premium over

3  their normal hourly rates").

4      The Court is not fully convinced that the contingency rationale lends much support to Class

5  Counsel's fee request.  Class Counsel, for the most part, have a great deal of experience litigating

6  TCPA class actions and presumably would "know how to pick a winner."  Furthermore, Class

7  Counsel's apparent strategy of filing numerous small, related cases, with a few attorneys working

8  on each, hedges against the the risk of recovering nothing for their work.  For example, if Rose and

9  Ramirez had looked unpromising, Class Counsel could simply have chosen not to file Duke,

10  Bradshaw, Makin, and Johnson.  This strategy also puts heavy pressure on defendants to settle the

11  case early.  Finally, because the TCPA has the potential of ruinous financial liability ($500 or

12  $1,500 per violation, and some defendants are accused of millions of violations), defendants will

13  almost always settle if there is any merit at all to the case.  This factor does not support the

14  requested fee.

15          **iii.  Conclusion as to fees**

16      The relevant factors do not justify an award of 25% of the common fund, nor do they justify

17  a high lodestar multipler such as 5.34 or 8.65.  A lower multiplier is still warranted, however; the

18  Court does not mean to imply that Class Counsel achieved nothing nor that they took no risk in

19  bringing these actions against Defendants.  Class Members still receive monetary compensation for

20  their statutory injuries and were unlikely to have filed suit on their own.  The Court determines that

21  a multiplier of 2.59 is appropriate (the same multiplier awarded in Arthur v. Sallie Mae, where

22  many of the same attorneys were present, similar arguments were made,[7] and similar results were

23  achieved).

[7] In both the instant case and Arthur v. Sallie Mae, the parties disagreed over the interpretation of the FCC's January 4, 2008 declaratory ruling addressing prior express consent in the context of creditor-debtor relationships (In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559 (2008)).  The plaintiffs in both cases argued that prior express consent is deemed to be granted only if the cell phone number be provided during the loan's origination.  Defendants in both cases argued that prior express consent could be given at any time during the life of the loan.

United States District Court
For the Northern District of California

Case 5:11-cv-02390-EJD Document 166-108 Filed 08/29/14 Page 22 of 22

A 2.59 multiplier applied to the $927,507.30 lodestar results in a total fee award of $2,402,243.91 (inclusive of costs).

Finally, the requested $2,000 award to each of the seven named Plaintiffs is fair and reasonable, falling squarely in line with incentive awards granted in other cases.

## IV. CONCLUSION

After consideration of the above, the Court GRANTS the motion for final approval of settlement, and GRANTS IN PART AND DENIES IN PART the motion for attorney's fees and costs.

**IT IS SO ORDERED**

Dated: August 29, 2014



EDWARD J. DAVILA
United States District Judge

Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS