Paul R. Kiesel, State Bar No. 119854
  kiesel@kiesel-law.com
Jeffrey A. Koncius, State Bar No. 189803
  koncius@kiesel-law.com
Matthew A. Young, State Bar No. 266291
  young@kiesel-law.com
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:  310-854-4444
Fax:  310-854-0812

Attorneys for Plaintiff, STANLEY NADER, on behalf of himself and all others similarly situated.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STANLEY NADER, on behalf of himself and all others similarly situated<br><br>    Plaintiff,<br><br>    v.<br><br>CAPITAL ONE BANK (U.S.A.), N.A. and DOES 1 through 20,<br><br>    Defendants.<br><br>AND RELATED CONSOLIDATED CASES | Case No. CV-12-01265-DSF (RZx) [Consolidated with Case Nos. CV-12-1772-DSF (RZx) and CV-12-4906-DSF (RZx)]<br><br>CLASS ACTION<br><br>**RESPONSE TO OBJECTIONS**<br><br>Judge:  Hon. Dale S. Fischer<br>Date:   November 3, 2014<br>Time:  1:30 p.m.<br>Crtrm.: 840 - Roybal |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 2

    A. Class Certification Is Appropriate Because Questions of Law and Fact Common to the Class Exist ........................................................... 2

    B. No Portion of the Common Fund Will Revert to Capital One ............... 3

    C. The Opt-out and Objection Procedures Are Sound ................................ 4

    D. *Cy Pres* Distribution of the Common Fund Remainder Is Appropriate .............................................................................................. 5

    E. Plaintiffs' Attorneys' Fee Request Is Reasonable .................................. 7

    F. Notice to the Class Is Sufficient and Informative ................................... 9

    G. The Requested Incentive Awards Should Be Approved ...................... 11

III. CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Ades v. Omni Hotels Mgmt. Corp.*
   2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014) ............................. 2, 3

*Bolton v. U.S. Nursing Corp.*
   2013 U.S. Dist. LEXIS 150299 (N.D. Cal. Oct. 18, 2013) ............................. 11

*Fraley v. Facebook, Inc.*
   966 F. Supp. 2d 939 (N.D. Cal. 2013) ............................................................. 7

*In re Cellphone Fee Termination Cases*
   186 Cal. App. 4th 1380 (2010) ................................................................ 10, 11

*In re Google Referrer Header Privacy Litig.*
   2014 U.S. Dist. LEXIS 41695 (N.D. Cal. Mar. 26, 2014) ............................... 7

*In re Netflix Privacy Litig.*
   2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ............................. 11

*Kearney v. Salomon Smith Barney, Inc.*
   39 Cal. 4th 95 (2006) ....................................................................................... 3

*Kline v. Coldwell, Banker & Co.*
   508 F.2d 226 (9th Cir. 1974) ........................................................................... 2

*Lagarde v. Support.com, Inc.*
   2013 U.S. Dist. LEXIS 67875 (N.D. Cal. May 13, 2013) ............................... 7

*Linney v. Cellular Alaska P'ship*
   151 F.3d 1234 (9th Cir. 1998) ....................................................................... 10

*Officers for Justice v. Civil Serv. Comm'n*
   688 F.2d 615 (9th Cir. 1982) ......................................................................... 10

*Ozga v. U.S. Remodelers, Inc.*
   2010 U.S. Dist. LEXIS 91196 (N.D. Cal. Aug. 9, 2010) ................................. 6

*Radcliffe v. Experian Info. Solutions*
   715 F.3d 1157 (9th Cir. 2013) ....................................................................... 11

*Rausch v. Hartford Fin. Servs. Group*
   2007 U.S. Dist. LEXIS 14740 (D. Or. Feb. 26, 2007) ................................... 11

*Razilov v. Nationwide Mut. Ins. Co.*
   2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13, 2006) .................................. 11

*Six (6) Mexican Workers v. Ariz. Citrus Growers*
   904 F.2d 1301 (9th Cir. 1990) ......................................................................... 5

*State v. Levi Strauss*
  41 Cal.3d 460 (1986) .................................................................................... 5

*Stuart v. Radioshack Corp.*
  2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010) ................................. 6

*Torres v. Nutrisystem, Inc.*
  289 F.R.D. 587 (C.D. Cal. 2013) ............................................................... 2, 3

*Van Vranken v. Atlantic Richfield Co.*
  901 F. Supp. 294 (N.D. Cal. 1995) ................................................................ 11

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541 (2011) ................................................................................... 3

**STATUTES AND RULES**

15 U.S.C. § 15 .................................................................................................... 2

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 3

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 8:32 (4th ed. 2002) ............................................................................................................ 10

Manual for Complex Litigation (Fourth) § 21.312 (2004) .............................. 10

## I. INTRODUCTION

After three years of hard-fought litigation, including two motions to dismiss, a motion for summary judgment, and full briefing on class certification, the parties, rather than unnecessarily expending additional resources in litigating this matter any further, reached a Settlement so that relief may be provided to the Class in an expeditious and economical fashion. The reaction of the Class to the Settlement has been overwhelmingly positive. As of the date of this filing, 46,411[1] claims have been submitted, only 15 Class Members have chosen to exclude themselves from the Settlement, and only three Class Members have objected. *See* Declaration of Matthew A. Young, filed concurrently herewith, Ex. "1", Summary Dashboard Report. Now, despite the Class's solidly favorable reaction, Chuck Congdon, Kevin E. King[2] and Michelle Melton (the "Objectors") look to undo the parties' efforts by objecting to purported infirmities in the Settlement that do not exist. *See* Final Compendium of Objections [Doc. No. 167]. For the reasons set forth below, and those set out in Plaintiffs' Motion for Final Approval of Class Settlement [Doc. No. 142] the objections should be overruled in their entirety and final judgment entered.

---

[1] Direct notice was given by postcard and email to 1,896,044 Class members, of which 1,218,739 were sent by e-mail and 677,305 by postcard. Follow up emails were also sent to individuals and notice was also published in the regional editions of USA Today in all relevant markets.

[2] The Objection of Mr. King seemingly deals with the fact that he has not been recognized as a named plaintiff in this lawsuit and asserts violations of his First, Sixth and Fourteenth Amendment rights. King Objection [Doc. No. 162] 2:8-11. This Court previously found that "Mr. King is not the plaintiff" (Mem. Order (July 28, 2014) [Doc. No. 140]), and the parties defer to the Court's discretion regarding the treatment of Mr. King and otherwise do not take a position on, or otherwise address, his constitutional points raised, in this Response.

## II. ARGUMENT

Each of the Objectors' arguments and assertions are addressed, in-turn, below.

### A. Class Certification Is Appropriate Because Questions of Law and Fact Common to the Class Exist

Objector Melton takes issue with a class being certified here. Melton Objection [Doc. No. 166] 4:2 – 6:19. That contention is without merit as set forth at length in Plaintiffs' Motion for Final Approval. *See* Mot. Final Approval 18:1 – 22:21. Further, Judge Christina Snyder of this District just certified a class under the Privacy Act at issue here in which she addressed many of the same arguments Ms. Melton now advances. *See Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-cv-02468-CAS(MANx), 2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014).

For example, Ms. Melton argues that the $5,000 damages provision weighs against a class being certified herein. However, in *Ades*, the Court disposed of that exact issue: "the Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification." *Id.* at *43. And, indeed, only focusing on a theoretical potential recovery of 100% does not take into account that a person would have difficulty retaining an attorney to represent them especially where costs and fees are not available under the statute – despite Ms. Melton's argument to the contrary and which distinguishes her citation to *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234 n.5 (9th Cir. 1974) (where it was noted, "Since attorneys' fees and costs are also recoverable in a successful 15 U.S.C.§ 15 action, it may be safely assumed that a great many of the cases could be separately prosecuted.").

Similarly unavailing is Ms. Melton's citation to *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. 2013), for the proposition that class certification may never be appropriate in actions involving Privacy Act violations because the Court would be required to address individual inquiries about a person's objectively

reasonable expectation that his or her conversation was being overheard or recorded. Melton Objection 4:1 – 6:19. That case involved inbound calls and Nutrisystem had a policy of disclosing its recording on every inbound call within nine seconds. *Torres*, 289 F.R.D. at 590. Consumers would not hear the warning only if they pressed a number to connect with another department in the first nine seconds; yet, this seldom occurred because the listing of departments was only provided after the disclosure was made. *Id*. Here, there is no evidence that Capital One customers receiving outbound calls were exposed to disclosures that could impugn their confidentiality claim. And, nothing suggests the confidentiality of Class Members' calls could not, in any event, be determined on a class-wide basis. *See, e.g.*, *Ades*, 2014 U.S. Dist. LEXIS 129689 *30-38 (finding *Torres* analysis unpersuasive and instead relying on analysis of California Supreme Court in *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117-18 (2006)).

Simply, Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. Proc. 23(a)(2). "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). Here, the claims of all Class Members depend upon a common contention that the secret recording of telephone calls with Class Members violated the Privacy Act and the rights of Plaintiffs and Class Members. Plaintiffs' claims are based upon the same conduct by Capital One, based on common practices and procedures applicable to all members of the Class, resulting in the litigation of common legal issues. Further, the common questions of law and fact presented in this case could only be effectively and efficiently resolved in a classwide proceeding that would generate common answers to those questions.

### B. No Portion of the Common Fund Will Revert to Capital One

Ms. Melton also contends that the consideration offered to the Class is

illusory because Capital One has discretion to distribute settlement funds as payment of debt owed to Capital One. Melton Objection at 8:13-26. She argues that the application of settlement funds towards pre-existing debt is equivalent to pre-judgment attachment of the settlement consideration and is therefore inappropriate, especially in situations where the debt is disputed. *Id.* However, there is no need to address the relative merits of these points as they are now moot. As stated in Plaintiffs' Motion for Final Approval, "the Common Fund, and all payments under the Settlement, shall be in cash" (Mot. for Final Approval 4, n.3), and the settlement website has indicated as much since early August. Accordingly, Ms. Melton's argument is based on a flawed premise and should be disregarded. Further, the Class will be getting a monetary recovery payable by check, and under no circumstances will any portion of the Common Fund revert to Capital One. *See, e.g.*, Settlement Agreement ¶ 3.1 (setting out in no uncertain terms that Capital One "shall have no reversionary interest in any portion of the Common Fund" and that unclaimed funds shall be paid *cy pres*).

### C. The Opt-out and Objection Procedures Are Sound

The Objectors attack the Settlement's opt-out and objection procedures, but those points are also without merit.

**CONGDON**: Mr. Congdon suggests that it is inappropriate to allow the opt-out deadline to predate the objection deadline, primarily because it is "confusing". Congdon Objection 3:7-13. Mr. Congdon asserts that Class Members must have the opportunity to read and evaluate objections before deciding whether to opt-out. *Id.* However, Mr. Congdon's argument cites no authority for this position, and it is certainly not a basis on which to invalidate the Settlement. Class Members were given a very reasonable period of time within which to file their objections and requests to exclude themselves, and the dates to do so were clearly indicated on the notices that they received and on the settlement website.

**MELTON:** Ms. Melton complains that the objection procedures are

"intentionally designed to trip up objectors and improperly provide Class Counsel with the ability to interfere with the right to object" simply because objections are to be served on Class Counsel rather than filed directly with the Court. Melton Objection 7:19-24. However, this argument is of no moment and the Objectors' rights to have their objections heard have been preserved. The Court clearly stated in its Order of April 7, 2014, that "[t]he Court is not inclined to have objections filed with the Court." Minute Order (Apr. 7, 2014) [Doc. No. 126] ¶ 3. Indeed, Ms. Melton even acknowledges the Court's concern that handling objections "is not a good use of the Court's scarce resources." *Id.*; Melton Objection 8:5-8. The parties defer to the Court's Order in this regard and assure the Court that all objections received were filed as part of the Compendium of Objections.

**D.     *Cy Pres* Distribution of the Common Fund Remainder Is Appropriate**

The Settlement provides that any amount of the Common Fund not paid to Class Members will be paid out through *cy pres* distributions to organizations agreed to by the Parties and approved by the Court. Settlement Agreement ¶ 11. None of the objections raised to the *cy pres* distribution have merit.

Ms. Melton attacks the very notion of the *cy pres* doctrine at its heart and argues that "[r]ather than distributing the money from uncashed checks, the administrator could easily arrange for a second distribution to class members." Melton Objection 10:3-17. However, the Ninth Circuit has noted that "Federal courts have frequently approved [*cy pres* awards] in the settlement of class actions where the proof of individual claims would be burdensome or the distribution of damages costly." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990); *State v. Levi Strauss*, 41 Cal.3d 460, 471 (1986).[3] Moreover,

---

[3] That none of the remaining Common Fund will revert to Capital One also supports
(footnote continued)

all of the *cy pres* recipients have requested funds to support and maintain long-term projects that will provide substantial benefits and a variety of services to consumers, providing indirect benefits to absent Class Members and those people who in the future are anticipated to have similar interests to the members of the present Class – to be free from invasion of their privacy. *See* Declaration of Paul R. Kiesel in Support of Plaintiffs' Motion for Final Approval of Class Settlement ("Kiesel Decl.") [Doc. No. 142-1] Exs. "6" and "7". Furthermore, the residual funds will only go to *cy pres* recipients if Class Members do not cash their settlement checks within a full six months after issuance. Settlement Agreement ¶ 11.

Both Mr. Congdon and Ms. Melton make similar unfounded assertions suggesting that the "Berkman Center at Harvard University is not focused on protecting consumers' right to privacy" and therefore its interests are "too remote from the plaintiff class." Melton Objection 10:18 – 11:4; *see also* Congdon Objection 2:18-26. However, the Berkman Center is focused on "investigations of privacy and privacy-relevant questions in the digitally networked environment. . . ." Kiesel Decl. at Ex. "6", Memo re Overview of Privacy-Related Activities at Berkman, at 1. Moreover, one of the Berkman Center's primary objectives is to "seek to surface, identify, and analyze critical emerging privacy challenges, support efforts to promote and preserve privacy rights, and design and implement practical

---

the reasonableness of this Settlement. *See Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196, at *5 (N.D. Cal. Aug. 9, 2010) (finding the fact that none of the settlement fund would revert to defendant supported final approval of the settlement as reasonable); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067, at *12-13 (N.D. Cal. Aug. 9, 2010) (that there is "no reversion" of settlement monies to defendant "provides substantial assurance that the settlement reflect[s] good faith on the part of the negotiating parties").

systems that allow research findings to benefit society." *Id.*

Ms. Melton attacks the Electronic Frontier Foundation ("EFF"), based on nothing more than a Wikipedia summary. Melton Objection 11:5-23. However, the EFF "educate[s] consumers about the communications services they use" and "work[s] both to ensure companies are held accountable for violating user privacy and to give users the tools and knowledge they need to protect their personal data and demand companies do the same." Kiesel Decl., Ex. "7", Report on the Electronic Frontier Foundation's Work Protecting Consumer Privacy, at 1.

Indeed, other District Courts in California have recently approved settlements providing for *cy pres* distributions to both the Berkman Center and EFF based on their work in the privacy arena. *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 946 n.7 (N.D. Cal. 2013) (Berkman Center and the Electronic Frontier Foundation "are not merely 'worthy' recipients with 'noble goals,' but organizations and institutions with demonstrated records of addressing issues closely related to the matters raised [in this case dealing with issues of internet privacy]."); *In re Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809 EJD, 2014 U.S. Dist. LEXIS 41695, *21 (N.D. Cal. Mar. 26, 2014) (finding that the Berkman Center is "aimed at resolving issues in the area of Internet privacy."); *see also Lagarde v. Support.com, Inc.,* No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, *9-11 (N.D. Cal. May 13, 2013).

It is submitted that *cy pres* distribution of unclaimed portions of the Common Fund is appropriate and the interests of the proposed recipients are properly aligned with, and will benefit, the Class.

### E. Plaintiffs' Attorneys' Fee Request Is Reasonable

The requested award of attorneys' fees is reasonable and should be approved. Plaintiffs' request for attorneys' fees is well supported by Plaintiffs' Motion for Attorneys' Fees, Litigation Costs and Incentive Awards [Doc. No. 143] ("Motion for Fees and Costs") and the detailed declarations submitted in support. Further, due care was given to make sure that this Court's Order regarding fees and costs was

complied with. *See* Order re Format of Time and Expense Records. While Mr. Congdon and Ms. Melton attack Plaintiffs' request for attorneys' fees, neither address the fact that an enormous amount of work went into reaching a settlement in this case. As stated in the Motion for Fees and Costs, Plaintiffs' counsel expended over 2,200 hours litigating this case for three years. The number of hours represents the extensive efforts of counsel in the litigation of multiple class actions which were eventually consolidated.

**CONGDON:** Mr. Congdon urges the Court not to deviate up from the 25% benchmark in awarding attorneys' fees. However, as thoroughly explained in Plaintiffs' Motion for Fees and Costs, Class Counsel seek no more than 25% of the Settlement Fund. *See* Mot. for Fees and Costs 2:1-4. Moreover, the reasonableness of Plaintiffs' fee request is confirmed by a lodestar cross-check which reflects that, rather than a lodestar multiplier, Class Counsel seek a *reduction* of more than 30%, based on their hourly rates. *Id*. at 2:5-7.

**MELTON**: Ms. Melton's main concern is that the number of attorneys working on this litigation creates the potential for duplicative billing. Class Counsel are well-aware of the Court's general admonishment against multiple timekeepers billing for the same task (*see* Order re Format of Time and Expense Records ¶ 8), and always made sure to minimize, and did minimize, any overlap of work performed. Indeed, as Ms. Melton recognizes, Class Counsel have been nothing but transparent in their billing practices: "Class Counsel are to be commended for providing detailed lodestar information, including a 191 page record of daily billing by each of the attorneys' seeking compensation under this Settlement, and a summary by category of billed amounts" in addition to the fact that "Class Counsel have not negotiated a clear sailing agreement." Melton Objection 14:5-11. In any

event, Class Counsel are sensitive to the Court's, and Ms. Melton's, concerns, and in fact, have intentionally billed "0 hours" in over 100 time entries for activities they considered to be either duplicative or non-billable.[4]

### F. Notice to the Class Is Sufficient and Informative

The Objectors claim that Class Members were not provided enough information to make an informed evaluation of the Settlement. Congdon Objection 2:28 – 3:6; Melton Objection 6:21 – 7:17. Nevertheless, at the same time, Ms. Melton commends the parties "for implementing a notice plan that includes posting of relevant documents on the settlement website, including the attorneys' fee motion and the motion for final approval." Melton Objection 6:21-24.[5] Additionally, it should be noted that the Second Amended Complaint, Settlement Agreement, and all Declarations and Exhibits attached to Plaintiffs' Motions for Final Approval and for Fees and Costs have also been posted to the Settlement Administrator's website. In other words, virtually all relevant documents and information relating to the Settlement has been made available for public consumption (in addition to being in the public court file).

Both Mr. Congdon and Ms. Melton argue that Class Members are entitled to know the potential recovery available to each member had the case been fully litigated. Congdon Objection 2:28 – 3:6; Melton Objection 6:25 – 7:5. However, the Ninth Circuit has held that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.

---

[4] *See, e.g.,* "Time Report", attached as Exhibit "3" to Kiesel Decl., at 40 (Prescott Littlefield's entry of June 4, 2012, for "Attend *Nader v. Capital One* Scheduling Conference").

[5] Ms. Melton acknowledges that, while a Spanish translation of the Notice "would have been helpful", it is not required. Melton Objection 7:13-17.

The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The court there continued, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id.* at 624 (citations omitted). Further, the "fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citation omitted).[6]

The Objectors further complain that the recovery for each claimant is unknown. Congdon Objection 2:28 – 3:6; Melton Objection 7:6-12.  However, that simply ignores the structure of the Settlement and how amounts are to be distributed. First, no estimate could possibly have been made until after the claims period had expired. Nevertheless, the formula defining how much each Class Member would eventually receive was clearly set forth in the Class Notice. Second, there is no requirement that the precise amount of individual recovery be specified in the Notice.[7] *See* Manual for Complex Litigation (Fourth) § 21.312, n.908 (2004); Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 8:32, at 265 (4th ed. 2002) (indicating that "[i]t is unnecessary for the settlement distribution formula

---

[6] In this regard, it is of no moment that Mr. Congdon asserts that the Settlement "fails to address Capital One's future behavior with respect to [violations of the Privacy Act.]" Congdon Objection 2:12-15. The parties did not include injunctive relief as a settlement term and should Capital One decide to no longer advise callers as required, they will do so at their own peril.

[7] Various state and federal "[c]ourts which have considered such objections in the context of class settlement have rejected the claim." *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380, 1392 (2010).

to specify precisely the amount that each individual Class Member may expect to recover.").

### G. The Requested Incentive Awards Should Be Approved

But for the Class Representatives' selfless drive and determination to seek justice on behalf of others, this case would never have existed. Here, Plaintiffs request an incentive award of $25,000 each for the Class Representatives so as to compensate them for the violation of their privacy and for their work in the case including being in constant contact with counsel, actively participating throughout the discovery process including responding to extensive written discovery as well as attending their depositions, and taking an active role in mediation. As thoroughly argued in Plaintiffs' Motion for Fees and Costs, the requested incentive awards comport with case law and are justified by the willingness of the Class Representatives to act as private attorneys general on behalf of the Class. *See, e.g., Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 U.S. Dist. LEXIS 150299, at *18-19 (N.D. Cal. Oct. 18, 2013) (approving a $10,000 incentive award); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13, 2006) (same); *Rausch v. Hartford Fin. Servs. Group*, No. 01–CV–1529–BR, 2007 U.S. Dist. LEXIS 14740 (D. Or. Feb. 26, 2007) (same); *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380 (same); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving a $50,000 incentive award); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379 EJD, 2013 U.S. Dist. LEXIS 37286, at *32 (N.D. Cal. Mar. 18, 2013) (incentive awards recognized that class representatives "assumed the responsibilities and burdens of acting as representatives"). Further, in no way were the incentive awards tied to the named representatives supporting the approval of the Settlement, as was the case in *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013), cited by Ms. Melton in her Objection.

Plaintiff Nader bore the laboring oar and risk of this litigation as Class

Representative and has responded to extensive written discovery, sat for his deposition, and physically attended the all-day mediation of this lawsuit, as well as reviewed the Class Notice, and he has remained in constant contact with Class Counsel on an almost weekly basis. Declaration of Kenneth Lipton [Doc. No. 147] ¶ 7.

Likewise, Plaintiff Olson cooperated at the outset of this case, and had his deposition taken, assisted with responses to written discovery, and he searched his files and other locations for any responsive documents, ultimately even reaching out to his cell phone carrier in an attempt to obtain responsive documents. Plaintiff Olson remained engaged regarding the status of the case, and he had regular correspondence or conversations regarding the progress of the case with Class Counsel. He made sure to be available by phone when the case was mediated and ultimately agreed to the settlement reached herein. Declaration of Prescott Littlefield [Doc. No. 151] ¶ 5.

Finally, Plaintiff Benkert remained in constant contact with his attorneys, Douglas Eaton and Leo Desmond, with respect to matters pertaining to his case. Mr. Benkert marshaled all necessary account documents needed for his attorneys to conduct their investigation into the merits of his claim and possible defenses, and participated in the drafting of his complaint, ensuring the accuracy of the allegations. Declaration of Douglas F. Eaton [Doc. No. 152] ¶ 6.

As a result of the named Plaintiffs' efforts and their decision to bring the case, the Class Members will benefit, and thus, the incentive awards sought are justified and should be approved.

**III.  CONCLUSION**

For the reasons set forth above and in Plaintiffs' Motions for Final Approval and for Fees and Costs, the objections of Mr. Congdon, Ms. Melton, and Mr. King should be overruled and final approval of the Settlement granted.

DATED: October 7, 2014  Respectfully submitted,

KIESEL LAW LLP


By: /s/ Matthew A. Young
    PAUL R. KIESEL
    JEFFREY A. KONCIUS
    MATTHEW A. YOUNG

LAW OFFICES OF KENNETH M. LIPTON
    Kenneth M. Lipton, SBN 82342
    5900 Sepulveda Blvd., Suite 400
    Van Nuys, CA 91411
    Tel: (818) 780-3562
    Fax: (818) 366-7097
    E-mail: *kenlipton998431@aol.com*

COHEN MILSTEIN SELLERS & TOLL PLLC
    Andrew N. Friedman
    [Admitted *Pro Hac Vice*]
    Douglas J. McNamara
    [Admitted *Pro Hac Vice*]
    1100 New York Avenue NW
    Suite 500 West
    Washington, DC 20005
    Tel: (202) 408-4600
    Fax: (202) 408-4699
    E-mail: *afriedman@cohenmilstein.com*
          *dmcnamara@cohenmilstein.com*

THE WENTZ LAW FIRM
Richard B. Wentz, SBN 120380
Jean M. Wentz, SBN 139340
33 Via Ricardo
Newbury Park, CA 91320
Tel: (818) 269-8007
Fax: (805) 480-9680
E-mail: *rick.wentz@gmail.com*
    *jean.wentz@gmail.com*

BRAUN LAW GROUP, P.C.
   Michael D. Braun, SBN 167416
   10680 Pico Blvd., Suite 280
   Los Angeles, CA 90064
   Tel: (310) 836-6000
   Fax: (310) 836-6010
   E-mail: *mdb@braunlawgroup.com*

Attorneys for Plaintiff, STANLEY NADER, on behalf of himself and all others similarly situated

KEARNEY LITTLEFIELD, LLP
   Thomas A. Kearney, SBN 90045
   Prescott W. Littlefield, SBN 259049
   633 W. Fifth Street, 28th Floor
   Los Angeles, CA 90071
   Tel: (213) 473-1900
   Fax: (213) 473-1919
   E-mail: *tak@kearneylittlefield.com*
         *pwl@kearneylittlefield.com*

RINGLER SCHMIDT, A LAW CORPORATION
   Jerome L. Ringler, SBN 59918
   Catherine Burke Schmidt, SBN 212827
   233 Wilshire Boulevard, Suite 900
   Santa Monica, CA 90401
   Tel: (310) 955-4105
   Fax: (310) 955-4106
   E-mail: *jlr@ringlerschmidt.com*
         *cbs@ringlerschmidt.com*

Attorneys for Plaintiff, JARETT OLSON, on behalf of himself and all others similarly situated

**CERTIFICATE OF SERVICE**

I certify that all counsel of record who has consented to electronic notification is being served on October 7, 2014 with a copy of this document via the Court's CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants as follows:

Kevin E. King
AT 1700
P. O. Box 600
Tracy, CA 5378-0600

                                              */s/ Matthew A. Young*
                                              Matthew A. Young